546 So.2d 683 (1989)
Robin Joyce ROBINSON (Irwin)
v.
Steven Jay IRWIN.
No. 58405.
Supreme Court of Mississippi.
June 21, 1989.
Thomas L. Tullos, Bay Springs, for appellant.
C. Grant Hedgepeth, Franklin C. McKenzie, Jr., PA, Laurel, for appellee.
Before HAWKINS, P.J., and ROBERTSON and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
This appeal arises from a divorce proceeding brought in the Chancery Court of Jones County, Mississippi. We affirm in part, and reverse and remand in part.

I.
Robin Joyce Robinson and Steven J. Irwin were married on August 29, 1980. Robin was employed as an accountant with Sanderson Farms in Laurel, and Steven was employed as an investigator by the District Attorney's Office in Jones County. Both were graduates of the University of Southern Mississippi. In the spring of 1981 the couple decided that Steven would attend law school at the University of Mississippi in Oxford on a full-time basis and Robin would remain in Laurel and continue to provide support for the couple from her job at Sanderson Farms. While in law school, Steven did not hold a full-time job; however, he did work on a part-time basis doing research work and did receive some monies from his research. Robin was the major source of income for the couple, including Steven's expenses while in law school. After Steven completed law school, he returned to Laurel, opened a law office and began the practice of law.
Difficulty arose between the couple over the next couple of years. Steven began making trips out of town without his wife, and eventually Robin, because of suspicion that Steven was having an affair, refused *684 to allow him back into the home of her parents where the couple had lived since their marriage. On May 28, 1986, Steven and Robin separated and Robin filed for divorce based on the grounds of adultery or in the alternative habitual cruel and inhuman treatment.
On September 26, 1986, the Honorable Shannon Clark, Chancellor of the Nineteenth Chancery District, recused himself from hearing the case. A Special Chancellor was appointed by the then-Governor Bill Allain to hear the case. The Honorable David Massey of Laurel was appointed. Robin filed a motion for the Special Chancellor to recuse himself based upon (1) he and Steven both practiced law in Jones County, (2) Mr. Massey and Steven played golf together, and (3) she felt that there was a sufficiently close relationship existing between the two. The Special Chancellor refused to recuse himself, and the case proceeded to trial on December 16, 1986.
Robin moved the court to grant her permanent alimony and an equitable share of all the money generated by Steven Irwin from his legal education, the ownership and possession of at least one car, the stock in the Laurel Country Club, her equitable share of those monies located in a savings account and IRA's in a local bank, grant to her an equitable share of the personal property accumulated by the parties and to reimburse her for all money she had spent in sending Steven Irwin to law school. At the conclusion of the trial, the court awarded both cars to Steven as well as the stock in the Laurel Country Club. Steven was ordered to pay Robin $5,400.00 as lumpsum alimony, $500.00 per month for twenty-four months as monthly alimony, $2,000.00 attorney's fees and the amount of $5,441.82 which was the amount in an IRA account. Robin also had her maiden name of Robinson restored. Robin appealed to this Court from the lower court's decision.

II.
Robin assigned as error of the chancery court the failure of the Special Chancellor to recuse himself. Robin contends that because of the relationship that existed between the Special Chancellor and Steven that the Special Chancellor should have recused himself from the case based upon the fact that (1) David Massey was a member of the Jones County Bar and had his office in Laurel as did Steven; (2) Mr. Massey and Steven had played golf together on several occasions; (3) Steven and Mr. Massey dined together in May, 1986, at the Laurel Country Club and Steven had paid for Mr. Massey's meal and (4) both attorneys practice in the same county and city and know each other intimately. Robin feared that she would not receive fair treatment from the Special Chancellor because of the relationship she assumed existed between David Massey and Steven.
Steven and Mr. Massey both admitted to having played golf on perhaps two or no more than three occasions and only then in an effort to complete a foursome. Both Steven and David Massey stated that it was not their practice to play golf together on a regular basis. The luncheon date that Robin alluded to took place when Mr. Massey had a case pending before the municipal court in which Steven was the city prosecutor. Mr. Massey joined Steven in an attempt to discuss the case before the city court. After the meal, the two flipped a coin to see who would pay for the meal, and Steven lost. Therefore, he paid for the meal. To the best of the knowledge of both Steven and Mr. Massey, this is the only time the two had ever had lunch together and neither Robin, Steven nor Mr. Massey could remember any time in which the couples had had social contact. Robin cites Canon 2 of the Code of Judicial Conduct as her reason for having Mr. Massey recuse himself as Special Chancellor from hearing the case. The Canon states:
A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
In the comments following the Canon there is a statement which reads, "Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety *685 and appearance of impropriety. He must expect to be the subject of constant scrutiny." Robin asserts that because of the contact between Mr. Massey and Steven that there was the cloud of impropriety over his sitting as Special Chancellor to hear their divorce suit.
This Court recognizes the fact that there are suits brought before a chancellor in which he knows one or both of the parties. Most chancellors adhere to an unwritten rule not to hear the personal divorce suits of lawyers who routinely practice before their courts. This Court commends such a practice, and it would be wise for appointing authorities and local lawyers to adhere to such practice. This divorce was such a case to Chancellor Shannon Clark, and he properly recused himself. It is incumbent upon a judge to respect the Judicial Canons and as the Biblical standard dictates, "Flee the appearance of evil". This Court would have preferred that the Special Chancellor recuse himself in light of the contact between Steven Irwin and Mr. Massey. However, standing alone, this assignment of error is not reversible error.

III.
Robin contends that the lower court erred in refusing to grant her divorce upon the grounds of adultery. Robin asserts that she established a case for divorce on the grounds of adultery and the court improperly granted the divorce on habitual cruel and inhuman treatment. This Court feels it is unnecessary to go into the details of the grounds presented by Robin. However, we do feel that the lower court could just as easily have found grounds for divorce on adultery as it did for habitual cruel and inhuman treatment. The fact remains that a divorce was granted to the parties and a reversal on these grounds would do no more than what was done. We feel that the error, if any, was cured by the granting of the divorce. Therefore, we find no reversible error in the granting of the divorce on the grounds of habitual cruel and inhuman treatment rather than adultery. This Court will not reverse a chancellor's decree of divorce unless it is manifestly wrong as to law or fact. Aldridge v. Parr, 396 So.2d 1027 (Miss. 1981), citing Humber v. Humber, 109 Miss. 216, 68 So. 161 (1915); Dubois v. Dubois, 275 So.2d 100 (Miss. 1973).

IV.
Robin asserts that the lower court erred in failing to divide certain personal properties that were in the name of Steven Irwin. The chancellor stated that he was without authority to divest a spouse of title to property. This simply is not accurate. Watts v. Watts, 466 So.2d 889 (Miss. 1985) and Jones v. Jones, 532 So.2d 574, 580 (Miss. 1988). Robin asserts that all property in the name of Steven was obtained after the marriage and, therefore, was common to the marriage and should have been divided evenly between the two parties. While this Court agrees that a more equitable division of personal property could have been made, the chancellor is not obligated or required by law to equally divide the property of the parties to a divorce. Dillon v. Dillon, 498 So.2d 328 (Miss. 1986), citing Rives v. Rives, 416 So.2d 653 (Miss. 1982). We, therefore, find no reversible error in the division granted by the Special Chancellor.

V.
Robin next asserts that the lower court erred in failing to award her lumpsum alimony in order to reimburse her for paying for Steven's education. At the trial Robin presented evidence and submitted such into the Court outlining the monies that she expended from her salary for the education of Steven. In many instances in which one spouse returns to school while the other works and supports the family, the spouse in school continues to make contributions to the marriage albeit not financial. In the case before this Court today, Steven lived apart from Robin and for the most part was "kept" by Robin. Upon his completion of law school, Steven, while setting up his law practice, continued to live and act as though he had no obligation to his marriage partner. This Court finds such conduct reprehensible.
*686 The record shows that Robin made substantial contributions to the support of Steven, both while in law school and upon his completion of law school. Robin was able to produce evidence showing where she had contributed $28,000.00 to Steven while he was in school. Upon his completion of law school, Robin contributed $11,000.00 to a joint savings account; $6,900.00 was put into IRA accounts by Robin in Steven's name. Robin also contributed $1,200.00 to office furniture for Steven's law office. This Court finds that the award granted by the lower court was inadequate and amounted to an abuse of discretion. Tutor v. Tutor, 494 So.2d 362 (Miss. 1986).
This Court finds that Robin's contribution to Steven's education, the opening of his law office and her contribution to savings accounts and IRA's should be the subject of further inquiry in regard to lumpsum alimony upon remand. We remand this case to the lower court for the purpose of addressing this single issue. The lower court's award of $2,000.00 attorney's fees will stand as granted, and we further grant $1,000.00 attorney's fees to Robin for her appeal to this Court.
We, therefore, affirm the judgment of the chancery court in regard to the recusal of the Special Chancellor and the grounds upon which the divorce was granted and also the division of personal property. We reverse and remand as to the question of lump-sum alimony for a determination not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON and BLASS, JJ., concur.
SULLIVAN, J., not participating.