586 So.2d 155 (1991)
David Edward DUDLEY
v.
Christine S. LIGHT and Crystal Light Dudley.
No. 90-CA-0114.
Supreme Court of Mississippi.
August 28, 1991.
James R. Hayden, Hattiesburg, for appellant.
Rex K. Jones, Hattiesburg, for appellee.
Samuel E. Farris, Hattiesburg, for appellee and cross-appellant.
Before ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
David Edward Dudley and Crystal Light Dudley were married on August 22, 1976, in Forrest County, Mississippi. The couple lived together as husband and wife until they were separated on January 15, 1988. While married, David and Crystal adopted a daughter, Krista Michelle Dudley, whose birth date is October 29, 1983.
During the couple's marriage, David and Crystal acquired various property such as a home, several automobiles, household furnishings and personal property. The real property, being the homestead, was acquired as joint tenants with right of survivorship. Other assets, however, were acquired solely in the name of David Dudley. Shortly after his marriage, David Dudley opened and maintained a business known as Square "D" Metal Company. This sheet-metal business was never incorporated and is claimed solely by the appellant, David Dudley. Also, Mr. Dudley purchased a retail business known as Circle "C" Western Store, Inc. This clothing *156 store, owned solely by David Dudley, was operated for the latter part of the marriage by the appellee, Crystal Light Dudley.
On July 8, 1988, Crystal Light Dudley filed a complaint for divorce in Forrest County Chancery Court. Subsequently, Ms. Dudley filed her First Amended Complaint on March 24, 1989, and her Second Amended Complaint for Divorce on April 3, 1989.
David Dudley answered the complaints for divorce and filed counter-claims on April 6, 1989 and April 13, 1989; Dudley filed an amended answer and cross-complaint on July 5, 1989.
Prior to trial, Christine S. Light, the mother of Crystal Dudley, filed a complaint against David and Crystal asking the court to find that a constructive trust had arisen in her favor in the sum of $50,000.00 and, further, requesting that an equitable lien be impressed upon the homestead of the parties to secure payment of the debt. After answer by both David and Crystal Dudley, the trial court granted Christine S. Light's motion to consolidate the two causes for trial.
After a trial on the merits, the chancellor rendered a final judgment divorcing David and Crystal Dudley and awarding the exclusive care and custody of Krista Dudley to her mother. Further, the court awarded Crystal Dudley the use and occupancy of the marital home as well as $270.00 per month in child support. Finally, Chancellor Taylor found that Christine S. Light was entitled to an equitable lien in the sum of $50,000.00 impressed against David and Crystal Dudley. The lien was also impressed against the homestead of the Dudley's to secure payment of the debt.

STATEMENT OF THE FACTS
David and Crystal Dudley were married on August 22, 1976. The Dudleys worked very hard and lived frugally to save money for their own home. David worked long days at his own business, Square "D" Metal, and Crystal worked full time as well. Through their efforts, David and Crystal were able to pay for and build their family home over a three year period. This home is now valued at $120,000.00.
In 1982, F.M. Smith, David Dudley's brother-in-law, approached him about becoming a partner in a western store in Laurel, Mississippi. Mr. Smith needed capital to begin the new venture and solicited David for his help. Believing the store to be a good idea, David Dudley borrowed more than $90,000.00, by placing a mortgage on his home, and became a fifty-percent partner in Circle "C" Western Store, Inc.
Circle "C" never became the money making venture that F.M. Smith had envisioned. As a result, Mr. Smith left the business and David Dudley became the full owner of the store. David lacked the retail experience to manage Circle "C" so he turned the day-to-day operations over to his wife, Crystal. As the store struggled to break even, David and Crystal found themselves having to repay the $90,000.00 bank loan out of their own pockets. In time, the Dudleys were only paying the interest on the loan. As the threat of foreclosure became more serious, Crystal Dudley's mother, Christine S. Light, helped the Dudleys by either: (1) investing $50,000.00 in the Circle "C" Western Store; or (2) loaning David and Crystal Dudley $50,000.00 for the specific purpose of saving the couple's home. In any event, David Dudley took the money from Christine Light and paid off the outstanding mortgage on his home.
Four years later, in July of 1988, Crystal Dudley filed a complaint for divorce. After answers and cross complaints by David Dudley, the matter came for trial before the Honorable William Taylor, Jr., on April 13, 1989. Chancellor Taylor, after hearing the evidence presented, ruled that the complaint for divorce should be dismissed but that a new trial was in order.
Prior to the first trial, Christine S. Light filed her complaint asking the lower court to impress an equitable lien against David and Crystal Dudley. The actions were consolidated and a second trial was held on October 18, 1989. The lower court then issued its written opinion on January 3, 1990.
*157 At the April 1989 trial, Mr. Dudley testified that he and his wife, Crystal, had been married almost thirteen years and that Crystal was a good wife and mother. Mr. Dudley testified that before he and Crystal were married, he had a net worth of less than $10,000.00. He stated that he now owns his own home and business and has a net worth of around $240,000.00. Mr. Dudley testified that he was able to build and pay for his $120,000.00 home by being cautious with his money. He stated that he and Crystal had retired an $80,000.00 mortgage on the residence within the last five years. Mr. Dudley testified that most of the funds to retire the mortgage came from the revenues of his sheet-metal business, Square "D" Metal.
Mr. Dudley testified he and his brother-in-law, F.M. Smith, purchased Circle "C" Western Store, Inc. Dudley stated that he had very little retail experience and that he purchased his interest in the store for his wife, Crystal. Dudley said that when Smith decided to "get out" of Circle "C", the business was $15,000.00 to $20,000.00 in the hole. Because of the store's poor performance, Dudley and Crystal decided to move Circle "C" from Laurel to Petal. He stated that at that time, Crystal's mother, Christine S. Light, decided to invest in the western store and that the investment transaction was handled strictly by Crystal.
Mr. Dudley stated that he was presently debt-free in that he owned his own business, Square "D" Metal, as well as all of the tools required by that business. He admitted that he had recently prepared a financial statement that showed his net worth at $240,000.00. David Dudley, however, was very reluctant to discuss the details of how he arrived at that figure and in response to those inquiries, asserted his Fifth Amendment rights when asked details about his operation of Square "D" Metal.
David Dudley filed a financial statement with the lower court that estimated his annual income to be $16,000.00. He stated that he averaged his incomes over a five year period to arrive at that particular amount. At that time, Dudley was reminded of his earlier testimony that he had discharged most of the $80,000.00 mortgage on his home from the revenues from Square "D" Metal. Dudley stated that he was not sure of the amount contributed by his business to the retirement of the mortgage.
In concluding his testimony at trial, Dudley stated that if the chancellor granted him a divorce, he would not assert an interest in the Circle "C" Western Store. He also stated that although the title to his wife's car was in his name, he had always considered it her vehicle. Finally, Dudley stated that he was presently paying $255.00 per month in child support.
Ms. Crystal Dudley testified that she and David, during their thirteen year marriage, had adopted a daughter, Krista Michelle Dudley, who was five years of age. Crystal Dudley admitted that the household goods had been divided by the parties and that she was satisfied with that division. Ms. Dudley testified that Circle "C" grossed $107,148.37 in 1988 and $115,884.57 in 1987.
Ms. Dudley testified that she brought home around $600.00 per month from her employment at Circle "C" Western Store. She stated that her monthly expenses included $182.50 in child care, $32.00 for dancing lessons, $150.00 in groceries and $100.00 for transportation. Ms. Dudley testified that if she was able to bring home more than $600.00 in a month, that she would repay her mother's "loan investment." Regarding the loan or investment made by Christine S. Light, Crystal Dudley stated as follows:
Q. Now, Mr. Dudley testified that the transaction wherein your mother put money into the business was an investment, and that you had initiated that; was that correct?
A. We were in bad trouble. It was either that or lose our house, which we didn't have no one else to turn to but my mother. I'm the one that came to him and said, "Look, let's ask mother." We were up to our necks. His family didn't have anything. My mother did have some money, so we went to her.
*158 At the conclusion of the April 1989 trial, the lower court granted David Dudley's motion dismissing the complaint for divorce filed by Crystal Dudley. The chancellor also denied Mr. Dudley's counter-claim for divorce. Chancellor Taylor then related that he believed that a new trial was in order in this cause.
On October 18, 1989, this action, along with the consolidated action of Ms. Christine S. Light, again came before the chancellor. David Dudley withdrew his April 13, 1989, motion to dismiss and moved to resubmit the evidence developed at that proceeding. After allowing the resubmission of the divorce action, Christine S. Light went forward with her case in chief to establish her claim for an equitable lien on the Dudley homestead.
Ms. Light testified that on February 10, 1984, she loaned Crystal and David Dudley $51,500.00 to pay-off the mortgage on their home. She stated that Crystal and David were both present when she gave them the money. Ms. Light testified that she made the loan to David and Crystal for the specific purpose of saving their house. She stated that there was no mention of the money being an investment in Circle "C" Western Store. Ms. Light denied that she loaned David and Crystal money as a "silent-partner" investment in Circle "C" Western Store. She stated that she had loaned Crystal smaller amounts of money to purchase inventory for the western store in the past, but that she loaned the Dudleys the $50,000.00 to pay for the mortgage on their home.
Mr. Dudley testified that in 1982, he and his wife borrowed $90,000.00 to invest in the Circle "C" Western Store. He stated that the couple used their family home as collateral for the loan. Mr. Dudley testified that the residence, as collateral, was never threatened with foreclosure although he and Crystal had become a few weeks behind on the note. Dudley testified that the $50,000.00 given to him by Christine Light was not for a certain percentage of the business or for a certain amount of stock, but that the $50,000.00 was all that Ms. Light "wanted to invest" as a silent partner in the business.
Crystal Dudley agreed that in 1982, Smith, David's brother-in-law, wanted to borrow money to open a western store. She stated that David agreed to put their home up for collateral and to borrow $93,000.00 to begin the business.
Ms. Dudley stated that by early 1984, Circle "C" was unable to pay the $1,200.00 per month bank note and that she and David were in jeopardy of losing their home. She stated that on February 10, 1984, they borrowed $50,000.00 from her mother to save the home that they had worked so hard to build. She stated that the money was for the sole purpose of saving their home from foreclosure and, in fact, the record reflects that on the following day $52,000 was paid on the deed of trust on the home.
The lower court, on January 3, 1990, issued its ruling granting a divorce in favor of Crystal Dudley. The chancellor also found as follows:
7.
The Court finds that David Edward Dudley is to pay to Crystal Light Dudley, through the Forrest County Chancery Clerk's office, the sum of $270.00 per month as child support; said payments are to begin on January 15, 1990, and continue on the 15th day of each month thereafter until further order of this Court.
8.
The Court finds that Crystal Light Dudley is to have the use and occupancy of the marital home of the parties for the use of the minor child of the parties until further order of this Court.
9.
The Court finds that Christine S. Light is entitled to an equitable lien in the sum of $25,000.00 in her favor from David Edward Dudley, and an equitable lien in the sum of $25,000.00 in her favor from Crystal Light Dudley, for monies that she had loaned them totalling $50,000.00 *159 during their marriage and that said equitable lien is on the following described property, ...
11. [sic]
The Court finds that David Edward Dudley is to have one of the three bedroom suits [sic] that have been acquired during the marriage as selected by the Plaintiff.
From this ruling by the lower court, this appeal was perfected.

Standard of Review.
Under established principles regarding this Court's scope of review, we are charged with examining the entire record. In so doing, the evidence which supports or reasonably tends to support the findings of fact made below, together with all inferences that may be drawn therefrom, must be accepted. If there is substantial evidence to support the findings made by the trier of fact, those findings must be affirmed. Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983). Findings of fact made by a chancellor may not be set aside or disturbed on appeal unless manifestly wrong. This is so whether the findings relate to evidentiary fact or ultimate fact. Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983).

DISCUSSION OF THE ISSUES

I. DID THE LOWER COURT ERR IN IMPOSING AN EQUITABLE LIEN IN THE SUM OF TWENTY-FIVE THOUSAND DOLLARS, ($25,000.00), IN FAVOR OF THE APPELLEE, CHRISTINE S. LIGHT, AGAINST THE APPELLANT, DAVID EDWARD DUDLEY, AND IMPRESSING THE EQUITABLE LIEN ON THE HOMESTEAD OWNED JOINTLY BY THE APPELLANT, DAVID EDWARD DUDLEY, AND APPELLEE, CRYSTAL LIGHT DUDLEY.
David Dudley argues on appeal that the lower court committed error by relying on Neyland v. Neyland, 482 So.2d 228 (Miss. 1986) to impress an equitable lien in favor of Christine Light. In Neyland v. Neyland, parents loaned their son and daughter-in-law $22,000.00 for the construction of a home. When the son and wife began divorce proceedings, the parents brought an action to impress an equitable lien upon the house built by the couple. In ruling that the parents were entitled to an equitable lien, this Court, citing Branca v. Branca, 443 A.2d 929 (Del. 1982), stated as follows:
(1) While in the usual case an equitable lien is impressed to reflect an express agreement that the property to be liened was intended to be held as security for the obligation of the promisor, Acacia Mutual Life Insurance Co. v. Newcomb, Del. Ch., 21 A.2d 723 (1941), a lien may also be impressed out of recognition of general principles of right and justice, Acacia v. Newcomb, supra; accord, Tucker v. Prevatt Builders, Inc., Fla.Ct.App., 116 So.2d 437 (1959); Sentel v. James, Ill. Ct.App., 16 Ill. App.2d 373, 148 N.E.2d 22 (1958); Fulp v. Fulp, N.C.Supr., 264 N.C. 20, 140 S.E.2d 708 (1965).
(2) A principal reason for impressing an equitable lien is to prevent unjust enrichment, i.e., where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another. Sherman v. Rhode Island Hospital Trust Co., R.I.Supr., 68 R.I. 525, 30 A.2d 498 (1943); Glen Falls Indemity Co. v. Golden, D.D.C., 148 F. Supp. 41 (1957).
Section 161 of the Restatement of Restitution states that "where property of one person can by a proceeding in equity by reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises."
Neyland, 482 So.2d at 230.
The chancellor determined that the money was loaned to Crystal and David Dudley to save their home rather than as an investment in Circle "C". The evidence established that Christine Light gave David and Crystal Dudley $51,500.00 on a Friday. On the following Monday, David Dudley paid $52,000.00 to reduce the mortgage against their home. This fact supports the *160 theory that the money was loaned to retire the home mortgage.
It appears that unjust enrichment would result if David and Crystal Dudley were permitted to divorce and partition the debt-free family residence. The chancellor determined that an equitable lien was necessary to protect Christine Light's interest in the subject property. We agree and affirm the holding of the chancellor.

CROSS APPEAL

I. DID THE LOWER COURT ERR IN IMPOSING AN EQUITABLE LIEN AGAINST THE HOMESTEAD OF THE PARTIES.
Crystal Dudley maintains that the lower court was in error when it impressed an equitable lien against her personally and against the homestead of the parties. Ms. Dudley asserts that the superior financial position of David Dudley should render him personally liable for the $50,000.00 debt.
Crystal Dudley cites no authority to support her position on appeal. She does, however, argue that the chancellor, under the facts presented at trial, erred when he failed to find David Dudley responsible for the debt at issue. Crystal asserts that David was less than candid with the lower court concerning his actual financial status.
The lower court was correct in granting an equitable lien against David and Crystal Dudley and against the homestead of the parties. Neyland v. Neyland is ample precedent for the chancellor's ruling and rightly protects the lender.

II. DID THE LOWER COURT ERR IN NOT AWARDING THE USE AND OWNERSHIP OF THE 1986 CAR TO THE APPELLEE, CRYSTAL LIGHT DUDLEY.
Crystal Dudley argues on appeal that the lower court erred by failing to award her the use and ownership of her personal automobile for the transportation of herself and the minor child. Ms. Dudley clearly prayed for the use and ownership of the 1986 Mercury in her complaint in the lower court. Therefore, she asserts that this Court should award her the use and ownership of the vehicle, or in the alternative, remand this cause for a new trial.
David Dudley addresses this assignment of error by stating as follows:
The Appellant and Cross Appellee, David Edward Dudley, would show that the Appellee and Cross-Appellant, Crystal Light Dudley, has had possession of the 1986 car, pursuant to the Final Judgment of Divorce, since it was not awarded to him, it was given to her, and that she has had the title for many months prior to perfecting this appeal and the Appellant and Cross Appellee feels no further response is required.
The ownership of the 1986 Mercury automobile is not controverted and indeed is confessed by David to be the property of Crystal. This Court cannot find any reason why the trial court did not deal with the ownership of the automobile. This Court does find that the 1986 Mercury should be awarded to Crystal and we take this occasion to ask both attorneys and chancellors to be as thorough and complete as possible on domestic matters. Automobiles are titled by the state and title cannot be changed without proof of one's right to do so. The trial court should have made a proper award of ownership in regards to this automobile.

III. DID THE LOWER COURT ERR BY FAILING TO MAKE AN EQUITABLE DISTRIBUTION OF ASSETS ACQUIRED BY THE PARTIES DURING THEIR 13 YEARS OF MARRIAGE.
Crystal Dudley argues on appeal that the lower court, in its final decree, failed to consider the assets of the parties, and the assets of the two businesses, acquired during the thirteen years of marriage. Further, Ms. Dudley asserts that the chancellor failed to distribute four other motor vehicles owned by the couple. As a result, Crystal Dudley contends that the lower court was in error in its January 3, 1990, ruling and prays for the action to be remanded for a full hearing regarding the assets of the parties.
David Dudley addresses this assignment of error by simply stating that the trial court had the benefit of a full hearing *161 when ruling upon the issue now asserted on appeal. Mr. Dudley maintains that the chancellor was correct in making his determination and certainly did not commit manifest error in his decision.
This Court has ruled that a chancellor is not obligated to equally divide the property of the parties to a divorce. In Robinson v. Irwin, 546 So.2d 683 (Miss. 1989), the Court stated:
Robin asserts that the lower court erred in failing to divide certain personal properties that were in the name of Steven Irwin. The chancellor stated that he was without authority to divest a spouse of title to property. This simply is not accurate. Watts v. Watts, 466 So.2d 889 (Miss. 1985) and Jones v. Jones, 532 So.2d 574, 580 (Miss. 1988). Robin asserts that all property in the name of Steven was obtained after the marriage and, therefore, was common to the marriage and should have been divided evenly between the two parties. While this Court agrees that a more equitable division of personal property could have been made, the chancellor was not obligated or required by law to equally divide the property of the parties to a divorce. Dillon v. Dillon, 498 So.2d 328 (Miss. 1986), citing Rives v. Rives, 416 So.2d 653 (Miss. 1982). We, therefore, find no reversible error in the division granted by the Special Chancellor.
Robinson, 546 So.2d at 685.
Like the appellant in Robinson, supra, the property sought by Crystal Dudley is in the name of her ex-husband, David Dudley. The chancellor was not required to equally divide the couple's assets. The chancellor is required to make some division of assets so that the parties may know who will have the use of or ownership of personal properties at issue.
In the case sub judice, it appears from the record that the parties agree that the western store is, or should be, the property of Crystal Dudley. However, while Crystal is in possession of the western store and operates it as though it is hers, all of the stock issued by Circle "C" Western Store, Inc. has been issued to David and he remains the sole owner. The trial court failed to deal with this important matter.
The trial court made no effort to determine the ownership rights or the disposition of Circle "C" or of Square "D" Sheet Metal business though both seem to be the product of the parties' joint efforts. The trial court had the parties, the assets and the questions of possession and ownership before it in January of 1990 when the court issued its ruling. The trial court did not deal sufficiently with all of the issues. We realize that the parties could have dealt with the vehicles and stock in Circle "C" or the ownership of Square "D". If they had, the trial court should have so noted it in its finding. Where ownership or possession is at issue, the court should make any disposition that the court finds suitable to the facts and the parties or note an agreement of the parties, but silence only assumes a new day of trials and a certain appeal.

IV. DID THE LOWER COURT ERR IN FAILING TO AWARD APPELLEE, CRYSTAL LIGHT DUDLEY, AN AMOUNT OF ALIMONY TO MAINTAIN THE STANDARD OF LIVING TO WHICH SHE HAD BECOME ACCUSTOMED AND TO ADEQUATELY PROVIDE FOR AN AMOUNT OF CHILD SUPPORT SUFFICIENT TO PROVIDE FOR THE CARES AND NEEDS OF THE MINOR CHILD, KRISTA MICHELLE DUDLEY.
Crystal Dudley argues on appeal that the lower court committed error by not awarding lump sum or periodic alimony and by awarding an amount of child support insufficient to provide for the needs of the minor child. She maintains, under Gray v. Gray, 484 So.2d 1032 (Miss. 1986) and Rudder v. Rudder, 467 So.2d 675 (Miss. 1985), that she was entitled to receive alimony from her husband, David Dudley.
In Gray v. Gray, Annie Gray brought suit in the Chancery Court of Alcorn County seeking separate maintenance from her husband. The chancellor awarded Ms. Gray $250.00 per month. On appeal, this Court ruled that the award was not sufficient *162 noting the superior financial status of the husband. The Court stated:
The nature of the marital relationship imposes upon Nelson Gray the continuing legal duty to support his wife. Having found that Annie Gray was entitled to separate maintenance, the chancellor was bound by equitable principles to award her an amount sufficient to maintain her standard of living in accord with her husband's estate and ability to provide for her well being.
Gray, 484 So.2d at 1033.
In Rudder v. Rudder, a wife appealed the lower court's award of $227.00 per month in periodic alimony. She asserted that her husband had hidden and disposed of assets to reflect a monthly income of only $702.51. This Court, in noting that Mr. Rudder had recently prepared a financial statement placing his monthly income at $3,202.64, ruled that the award was insufficient. The Court stated:
We have held many times that where the wife has `contributed to the accumulation of property of her husband ...' she is entitled to a reasonable award of alimony, to be paid in lump sum or monthly, or both... . (citations omitted)
Under the facts of this case, the $227.00 per month social security payment appears to be grossly inadequate for a wife who for some thirteen years contributed to her husband's financial plan. It is noteworthy that during these years Rudder's income and net worth rose steadily. We are of the opinion Rudder should not now be permitted to reap all the benefits of this increase simply by divesting himself of assets to avoid the appearance of income.
Rudder, 467 So.2d at 678.
Based upon the above jurisprudence, Crystal Dudley asserts that the lower court was clearly in error by not awarding her lump sum or periodic alimony. Further, Ms. Dudley contends that the lower court likewise erred by failing to award a reasonable amount of child support. In Tedford v. Dempsey, 437 So.2d 410 (Miss. 1983) this Court addressed a parent's obligation to pay child support as follows:
When entering a child support decree, the chancellor should consider all circumstances relevant to the needs of the children and the capacities of the parents. The reasonable needs of the children are obviously the beginning point in such inquiry. There is always some minimum level of food, clothing, shelter, day care, education, medical care and the like that must be provided. Above that, what is reasonable turns on the circumstances  and one of the major circumstances is the financial resources reasonably available to each parent.
Tedford, 437 So.2d at 422.
The trial court simply did not do enough. If the parties have agreed on a property settlement or division we must know it, or the parties must know it. The case sub judice may be a case where alimony was not awarded because of Crystal gaining Circle "C", but that should be a court finding or a party agreement, here it is neither. This may be a case where Circle "C" and Square "D" were a fair trade for the parties, but apparently the ownership of both rests in David with nothing to Crystal except present possession of Circle "C", there must be more finality to the issues before us.
Finally, the child support of $270.00 per month may be adequate if $16,000 per year is David's income, especially when use and possession of the house is awarded to Crystal who also has custody of Krista. However, the court may weigh this anew upon remand.
The lower court, in its judgment, did not address the distribution of the marital assets despite the evidence presented at trial. David Dudley testified that if the parties were finally divorced, he would not assert an interest in the Circle "C" Western Store, Inc., yet he is, after the trial, the sole stock holder. He also stated that he did not claim an interest in the 1986 Mercury driven exclusively by Crystal Dudley yet he is, after trial, the title holder. With this testimony before the lower court, the chancellor was under an obligation to make a definitive ruling regarding the distribution of the Dudley's property and the legal ownership *163 where necessary. Because the chancellor failed in this regard, we must now remand this matter for further proceedings regarding the ownership of the marital assets, Circle "C" and Square "D", and the vehicles, as well as a ruling on the issue of Crystal Dudley's claim for alimony. The court may also review the adequacy of child support for Crystal. Therefore, we affirm the chancellor on direct appeal and also regarding the grant of divorce to Crystal Dudley. We reverse, however, on cross appeal and remand this matter as to the economic issues addressed in this opinion.
AFFIRMED ON DIRECT APPEAL: REVERSED AND REMANDED ON CROSS APPEAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.