# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01220-SCT

*KENNETH K. STEINER, JR.*

*v.*

*GRACE FROST STEINER*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/1999 |
| TRIAL JUDGE: | HON. W. HOLLIS McGEHEE, II |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS M. McNEELY, JR. |
| ATTORNEY FOR APPELLEE: | PAMELA A. FERRINGTON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/28/2001 |
| MOTION FOR REHEARING FILED: | 02/21/2001; denied 7/26/2001 |
| MANDATE ISSUED: | 7/19/2001 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2. Grace Frost Steiner filed for divorce in the Adams County Chancery Court against her husband of 28 years, Kenneth K. Steiner, Jr. Following discovery, a Judgment of Divorce on the ground of irreconcilable differences was entered. Pursuant to the property settlement agreement executed by the parties and incorporated into the final Judgment of Divorce, Kenneth agreed to pay $900 per month for alimony. Eight years later, Kenneth filed a complaint for Modification and Termination of Alimony. On Motion of Recusal filed by Grace, the chancellors of the district recused themselves, and a special chancellor was appointed by this Supreme Court to hear the matter. At the hearing on Kenneth's modification complaint, after he had presented his case, Grace moved for a dismissal. The chancellor dismissed Kenneth's complaint, finding that he had failed to prove a substantial and material change of circumstances. Aggrieved by the chancellor's decision, Kenneth appeals to this Court raising the following issues:

> **I. WHETHER RECUSAL BY CHANCERY JUDGES SOLELY ON THE FACT THAT AN ATTORNEY IS ONE OF THE PARTIES IS SUBJECT TO ABUSE AND DELAY AND SHOULD ONLY BE CONSIDERED ON A CASE-BY-CASE BASIS.**

> **II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THERE HAD NOT BEEN A MATERIAL CHANGE OF CIRCUMSTANCES TO MODIFY AN ALIMONY AWARD.**

> **III. WHETHER THE VETERANS DISABILITY PAYMENTS WHICH ARE THE SOLE**

**INCOME OF THE VETERAN CAN BE ALIENATED OR SEIZED FOR ALIMONY UNDER STATE LAW IN VIOLATION OF THE ANTI-ALIENATION FEDERAL STATUTE THUS VIOLATING THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION.**

¶3. We find nothing in the record to indicate error on the part of the chancellor below. The findings were based on substantial evidence, and the chancellor's decision is affirmed.

## FACTS

¶4. Grace and Kenneth Steiner had been married twenty-eight years at the time the divorce action was filed. One child was born to their marriage, Kenneth K. Steiner, III, who was beyond the age of majority and attending college at the time of the divorce. The divorce was granted solely on the ground of irreconcilable differences. Kenneth was represented by counsel and is himself an attorney. Both parties signed the property settlement agreement; their signatures were notarized, and their respective attorneys each signed the agreement as approved. Kenneth agreed to pay Grace alimony in the amount of $900 per month until she remarried or until the death of either party. Kenneth further agreed to pay all college and living expenses for their adult son until he graduated and began working. Both parties agreed that Kenneth would have the use, possession, and control of the matrimonial domicile, that he would pay the mortgage, taxes, and insurance on the property and that he would assume the costs of upkeep and repairs.

¶5. After eight years of compliance without modification, Kenneth sought to modify the property settlement agreement by terminating his obligation to pay alimony, offering the following circumstances as the bases for the requested modification:

    1. His medical and personal care expenses had increased by approximately $1,100 per month since the divorce.

    2. He was continuing to pay the mortgage, taxes, insurance, and upkeep on the house;

    3. He had other debts;

    4. His health had deteriorated;

    5. Grace's income had increased;

    6. His income had increased by approximately $1,900 per month; and

    7. His income was derived from military disability benefits.

¶6. The chancellor found that Kenneth had failed to show that a substantial and material change in circumstances had occurred since the divorce and thus the property settlement agreement, which was made a part of the Judgment of Divorce, would not be modified. In his bench ruling the chancellor reserved the issue of whether federal law cited by Kenneth prohibited enforcement of the Judgment. The court allowed counsel additional time within which to submit briefs and applicable case law. Kenneth had advanced the theory that federal law prohibited the payment of alimony from veteran's disability benefits. After considering the submissions of both parties, the chancellor ruled that Kenneth's argument was not well taken and dismissed his complaint for modification pursuant to M.R.C.P. 41(b).

## STANDARD OF REVIEW

¶7. Our scope of review in domestic relations matters is limited. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Sandlin v. Sandlin*, 699 So.2d 1198, 1203 (Miss. 1997) (citing *Ferguson v. Ferguson*, 639 So.2d 921, 930 (Miss.1994)). "In other words, on appeal this Court is required to respect the findings of fact by the chancellor supported by credible evidence and not manifestly wrong." *Id*.

## DISCUSSION

### I.WHETHER RECUSAL BY CHANCERY JUDGES SOLELY ON THE FACT THAT AN ATTORNEY IS ONE OF THE PARTIES IS SUBJECT TO ABUSE AND DELAYAND SHOULD ONLY BE CONSIDERED ON A CASE-BY-CASE BASIS.

¶8. Kenneth argues that the chancellor's recusal, solely on the fact that Kenneth was an attorney was a tactic used primarily for delay purposes and was thus an abuse of discretion. Kenneth asserted that there was no evidence of any special relationship or connection between himself and the chancellor, thus a reasonable person would not have harbored any doubts about the judge's impartiality. Grace asserts that it was a policy of the chancellors in the Seventeenth Chancery Court District to recuse themselves in contested matters when one party was a practicing attorney in the district.

¶9. "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards." *Bryan v. Holzer*, 589 So.2d 648, 654 (Miss. 1991). "Canon 3(C)(1) requires the disqualification of a judge when 'his impartiality might reasonably be questioned, including but not limited to instances where ... he has a personal bias or prejudice concerning a party.'" *McFarland v. State*, 707 So.2d 166, 180 (Miss. 1997). "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Id.* "A presumption exists that the judge, sworn to administer impartial justice, is qualified and unbiased, and where the judge is not disqualified under the constitutional or statutory provisions, 'the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion.'" *Id.*

¶10. "Most chancellors adhere to an unwritten rule not to hear the personal divorce suits of lawyers who routinely practice before their courts." *Robinson v. Irwin*, 546 So.2d 683, 685 (Miss. 1989). "This Court commends such a practice, and it would be wise for appointing authorities and local lawyers to adhere to such practice." *Id.* Canon 2 of the Code of Judicial Conduct states: "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." In the comments following the Canon there is a statement which reads: "Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant scrutiny."*Id.*

¶11. There was no evidence presented that the chancellor was connected with Kenneth other than that Kenneth was a practicing attorney. The record does not indicate an attempt to delay the court proceedings, contrary to Kenneth's argument. The proceedings appear to have occurred in a timely manner, taking a little less than nine months from time of filing for modification, through discovery, recusal and trial. Further, this Court has stated that we do not recognize inconvenience as a factor to be considered when deciding a

recusal motion. ***Collins v. Joshi***, 611 So.2d 898, 902 (Miss. 1992).

¶12. We find no manifest error in the judgment of the chancellor to follow the common practice of the district. The chancellor did not abuse his discretion; and therefore, we affirm with regard to the recusal of the chancellor.

### II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THERE HAD NOT BEEN A MATERIAL CHANGE OF CIRCUMSTANCES TO MODIFY AN ALIMONY AWARD.

¶13. Kenneth argues that there had been a material change of circumstances in his financial and health conditions since the time of the divorce. However, in response to questions from the chancellor, it was acknowledged that the evidence presented proved that Kenneth's income had increased more than his expenses and that his adult son no longer had college expenses. Although Kenneth's physical condition had deteriorated, it had not affected his financial status because disability benefits were his primary source of income. That fact had not changed since the original agreement. He asserts that Grace's income had increased and that her standard of living had gone up while his had gone down.

¶14. Grace asserts that any changes in Kenneth's income and/or lifestyle were foreseeable at the time of the agreement. The chancellor agreed. He also found that no material change in circumstances had been presented that would allow the modification.

¶15. Support agreements for divorces granted on the ground of irreconcilable differences are subject to modification. The modification can occur only if there has been a material change in the circumstances of one or more of the parties. ***Varner v. Varner***, 666 So.2d 493, 497 (Miss.1995) (citing ***Thurman v. Thurman***, 559 So.2d 1014, 1017 (Miss. 1990)). The change must also be "one that could not have been anticipated by the parties at the time of the original decree." ***Tingle v. Tingle***, 573 So.2d 1389, 1391 (Miss. 1990). *See also* ***Yancey v. Yancey***, 752 So.2d 1006, 1010 (Miss. 1999).

¶16. The chancellor must consider what has become known as the ***Armstrong*** factors in initially determining whether to award alimony, the amount of the award, and in deciding whether to modify periodic alimony, comparing the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree. ***Tilley v. Tilley***, 610 So.2d 348, 353-54 (Miss. 1992). *See also* ***Anderson v. Anderson***, 692 So.2d 65, 72 (Miss. 1997); ***Armstrong v. Armstrong***, 618 So.2d 1278, 1280 (Miss.1993).

¶17. In the case sub judice, the court, nine years earlier, had approved the agreement which outlined the respective rights, remedies, privileges and obligations of the parties who signed the agreement stating that they had been fully informed of the other's assets, property, holdings, income and prospects. What must be kept in mind concerning this divorce is that the property settlement agreement was just that, an agreed payment whereby Kenneth contracted with his former spouse as part of an overall property agreement to make payments of $900 per month for periodic alimony. That Kenneth might have made a bad deal does not relieve him of his duty to live up to his end of the bargain.

> In property and financial matters between the divorcing spouses themselves there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought to enforce it and take as dim a

view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts. ***Bell v. Bell***, 572 So.2d 841, 844 (Miss.1990).

***Speed v. Speed***, 757 So.2d 221, 224-25 (Miss. 2000). Kenneth has alleged no fraud but stated in his testimony that although he did make this agreement he did it because he felt like Grace was "entitled to have something to help her get started and get her some kind of retirement benefit.... I felt she was entitled to at least some help but it's gotten to the point where I cannot afford to do it." The record indicates that Kenneth presented no evidence that Grace was guilty of fraud, mistake or overreaching. The record revealed that Kenneth was financially able to make the alimony payments, that he fully understood the agreement and voluntarily entered into the settlement after being fully advised by a lawyer, and that his circumstances had not materially changed . Kenneth's primary income, at the time the agreement was made, was from his disability benefits, and this fact has not changed. While Kenneth had argued that he did not think he should have to pay the alimony out of his benefit payments, the chancellor concluded that he had been doing so "all along." The chancellor found that Kenneth's income had increased approximately $1,900 and that his expenses had increased approximately $1,100. When the $900 alimony payments are deducted from Kenneth's present gross income and added to that of Grace, the net result is $5,667.30 for Kenneth and $3,284.08 for Grace. Even subtracting $2,100 for attendant care, Kenneth is left with a net of $3,567.30 or about $283.22 more net income than Grace.

¶18. We are of the opinion that the chancellor was correct both as a matter of law and fact, and his decision is affirmed. The chancellor has wide discretion in domestic cases, and our review on appeal is limited. The purpose of this Court is not to retry the case. The chancellor has the benefit of viewing the parties and hearing the parties' testimony and evidence as it is presented during the trial.

¶19. After reviewing the record, we conclude that there is sufficient evidence to support the chancellor's decision. We are of the opinion that although the alimony payments Kenneth originally agreed to were high, they are not so high as to be unconscionable and oppressive. As this Court said in ***Shaeffer v. Shaeffer***, 370 So.2d 240, 243 (Miss. 1979), "if the original decree rendered in this cause were allowed to be modified on the facts presented by this record, there would be no substance left to the rule that decrees . . . touching the maintenance and alimony of the wife, may only be made upon a showing of a material or substantial change in the after-arising circumstances of the parties." The chancellor did not err in his analysis under our present case law. There is sufficient evidence to show that the chancellor did not abuse his discretion. Accordingly, we find no merit to this issue.

### III. WHETHER THE VETERANS' DISABILITY PAYMENTS WHICH ARE SOLE INCOME OF THE VETERAN CAN BE ALIENATED OR SEIZED FOR ALIMONY UNDER STATE LAW IN VIOLATION OF THE ANTI-ALIENATION FEDERAL STATUTE WHICH WOULD VIOLATE THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION.

¶20. Kenneth argues that the chancellor erred in concluding that his veteran's disability payments could be considered in the award of alimony. Kenneth argues the United States Supreme Court barred such a result in ***Mansell v. Mansell***, 490 U.S. 581, 109. S.Ct. 2023, 104 L.Ed.2d 675 (1989) in which the Court interpreted the Uniform Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § § 1048 *et seq*. The U.S. Supreme Court held in ***Mansell*** that "the U.S.F.S.P.A. does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans'

disability benefits." 490 U.S. at 594-95.

¶21. Grace contends a more appropriate case for this Court to rely on is the U.S. Supreme Court's decision in *Rose v. Rose*, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed2d 599 (1987). The Court held that state courts can use contempt sanctions and a veteran can be incarcerated for failing to pay child support even if the only source of those payments was the veteran's disability benefits. *Rose* also held that state court jurisdiction in matters of child support and enforcement of support payments is not preempted by anti-attachment statutes.

¶22. *Mansell* and *Rose* are not precisely on point with the instant case. *Mansell* applied to division of marital property in a community property state, California, and not necessarily to alimony. Likewise, *Rose* dealt with child support and not alimony. However, in *Rose*, the U.S. Supreme Court noted the purpose of disability benefits was to provide compensation not just to the injured veteran but also to the veteran's family. 481 U.S. at 630.

¶23. Even if this Court were to conclude that *Mansell* was directly applicable to this case, the result would not necessarily be one favorable to Kenneth. An analysis of other jurisdictions demonstrates that some state courts have narrowly applied *Mansell*. For example, the Court of Appeals of Virginia has allowed trial courts to consider exempt military disability benefits in determining spousal support. *Holmes v. Holmes*, 375 S.E.2d 387 (Va. Ct. App. 1989). Thus, a trial court would be allowed to award an amount of spousal support that exceeded the veteran's monthly non-disability income. The Court of Appeals of Wisconsin concluded *Mansell* did not apply to the question of whether disability benefits "may be considered by the court as a factor in assessing [the veteran's] ability to pay spousal maintenance." *Weberg v. Weberg*, 463 N.W.2d 382, 384 (Wis. Ct. App.1990) The Court of Special Appeals of Maryland also concluded that VA disability benefits "may be considered as a resource for purposes of determining [one's] ability to pay alimony."*Riley v. Riley* 571 A.2d 1261, 1265 (Md. Ct. Spec. App. 1990). Similarly, the Supreme Court of Kentucky allowed a court to increase the amount of spousal support when there is an inequity in divorce proceedings due to the payment of disability benefits to one spouse. *Davis v. Davis*, 777 S.W.2d 230 (Ky. 1989). Another example is the holding of the Court of Appeals of Arizona that *Mansell* did not preclude the veteran's ex-wife from suing to enforce a separation agreement. *Harris v. Harris*, 991 P.2d 262, 264-65 (Ariz. Ct. App.1999). The Supreme Court of Arkansas applied a similar logic to that of *Davis* but went even further. In *Murphy v. Murphy* 787 S.W.2d 684, 685 (Ark. 1990), that court held that the decision in *Mansell* does "not preclude the trial court from ordering appellant to pay alimony, and once awarded, the FSPA does not relieve a retiree from paying such alimony obligations."

¶24. The case that seems to most closely parallel the instant case is from the Court of Appeals of Iowa, *In re Anderson*, 522 N.W.2d 99 (Iowa Ct. App.1994). That court affirmed an award of alimony by expanding *Rose* to apply to alimony as well as child support, noting that "both are viewed as familial support by the United States Supreme Court in *Rose*."*Id.* at 101.

¶25. We recognize that there are conflicting opinions such as *Ex parte Billeck*, 777 So. 2d 105 (Ala. 2000) and *Abernethy v. Fishkin*, 699 So. 2d 235 (Fla. 1997) that interpret *Mansell* as not allowing disability benefits to be applied in any way toward alimony. However, because neither *Mansell* nor *Rose* is precisely on point with the instant case, the trial court would be justified in not relying on either case and could not be said to have applied an erroneous legal standard. Indeed, a more equitable result is reached by relying on *Rose*. Thus, it cannot be said the chancellor's decision was an abuse of discretion. This

assignment of error has no merit.

## CONCLUSION

¶26. This Court finds that the issues presented by Kenneth K. Steiner, Jr. are without merit. There was no abuse of discretion in the recusal of the chancellors in the Seventeenth Chancery Court District. The chancellor appropriately considered the factors necessary to modify the award of alimony which was supported by substantial evidence. Military disability benefits were properly considered by the chancellor in the award of alimony. We therefore affirm the judgment rendered by the Adams County Chancery Court.

¶27. **AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, DIAZ AND EASLEY, JJ., CONCUR**.