CARLTON, J.,
concurring in part and dissenting in part:
¶ 19. I respectfully dissent in part due to the chancellor’s erroneous application of the law when identifying marital property and separate property for purposes of equitable distribution. The chancellor did *171 not identify Tamra’s marital-personal-property interest in the portion of Joseph’s military retirement that was earned during the marriage wherein she supported the marriage and materially contributed to the accumulation of the marital property.[6] In Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), the Mississippi Supreme Court directed chancellors to support their holdings with findings of fact and conclusions of law when equitably dividing property. I respectfully submit that since Tamra’s interest in Joseph’s military retirement was not included in the consideration of marital property, then the chancellor’s findings of fact and conclusions of law are erroneous.[7] Also, in dissenting, I acknowledge that even though the chancellor considered the propriety of alimony, the chancellor’s consideration of equitable division of property is separate and distinct from her consideration of alimony. I raise no dispute with the majority’s acknowledgment that Tamra is not automatically entitled to a portion of Joseph’s military retirement, but she is entitled to a fair consideration of her property .interest when the chancellor equitably divides the marital property. The failure to identify her marital-property interest in Joseph’s retirement precluded such a fair consideration. Additionally, the equitable division of marital property occurs prior to any consideration of alimony. See Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994).
¶ 20. Equitable distribution of property of a marriage requires as a first step that the property be properly identified as marital or separate in accordance with Ferguson, 639 So.2d at 928. Since in this case Tamra’s marital-property interest in Joseph’s retirement was not identified or considered in the equitable distribution of the property of the marriage, I would reverse and remand this case to the chancellor for consideration. In this case, Joseph’s military-retirement benefits that he earned during the marriage are marital property and are subject to equitable distribution under our state’s jurisprudence because of Tamra’s contribution to the marriage during Joseph’s military service. Therefore, since the chancellor failed to consider Tamra’s interest in the military retirement, I would reverse and remand this case for reconsideration of the equitable distribution by the chancellor.
¶ 21. “Military retirement benefits are considered personal property and as such are subject to equitable division in a divorce proceeding.” Rennie v. Rennie, 718 So.2d 1091, 1095 (¶ 13) (Miss.1998) (citing Hemsley, 639 So.2d at 914). As explained in Hemsley, “[t]he federal government has vested state courts with the power to allocate military retirement pay pursuant to a divorce decree.” Hemsley, 639 So.2d at 913 (citing 10 U.S.C. § 1408(c)(1) (Supp.1992)).[8] The Mississippi Supreme Court *172 has applied this rule to state courts in Mississippi. Powers v. Powers, 465 So.2d 1036, 1037 (Miss.1985). “Assets acquired or accumulated during the , course of a marriage are subject to equitable division unless it. can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.” Hemsley, 639 So.2d at 914. The supreme court in Hemsley also recognized that “[tjhere is a distinction between alimony and retirement benefits.” Id. “In reference to a spouse’s equitable right to a share of the other spouse’s military retirement pay, [the supreme court has] reiterated that a chancery court has authority, where equity so demands, to order a fair division of property accumulated through the joint contributions and efforts of the parties.” Id. In general, “[a] spouse who has made a material contribution toward the acquisition of property which is titled in the name of the other may claim an equitable interest in such jointly accumulated property incident to a divorce proceeding.” Ferguson, 639 So.2d at 935 (quoting Jones v. Jones, 532 So.2d 574, 580 (Miss.1988)). Further, “[t]he non-monetary contributions of a traditional housewife have been acknowledged by.[the supreme court], and to some extent, case law has helped lessen the unfairness to a traditional housewife in the division of marital property.” Id. at 926.
¶ 22. Joseph served in the United States Navy from 1982 until 2002. He and Tamra married in 1990 and separated in 2009. Thus, Joseph’s military service from 1990 until his retirement in 2002 overlapped with his marriage to Tamra. The record reflects that Tamra materially contributed to the accumulation of Joseph’s military retirement during these. twelve years by her support of his military service and their marriage. Consistent with this state’s precedent, Tamra therefore possesses a property interest in Joseph’s military retirement earned during the years of marriage that overlapped with Joseph’s military service. See Hemsley, 639 So.2d at 913; Ferguson, 639 So.2d at 928.
¶ 23. As previously acknowledged, in Ferguson, the Mississippi Supreme Court provided the following guidelines for chancellors to follow in the equitable division of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality [and] quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
*173 3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 24. In the chancellor’s order, under the heading “Application of the Ferguson Factors,” the chancellor identified the marital property in a chart entitled “Assets and Liabilities of the Parties.” The chancellor identified the following retirement accounts in this chart: (1) “Independent Solution 401K (Wife)”; (2) “PERS State Retirement (Wife)”; (3) “Franklin Templeton IRA”; and (4) “Vanguard Mutual Fund.” The order shows that the chancellor did not include any marital interest in Joseph’s military retirement in her identification of marital property. On appeal, Tamra argues that it is apparent from this chart that the chancellor “failfed] to place any value on [Joseph’s] military pension, which future income stream was valued, at ... the chancellor’s own order, at between $405,238.05 and $474,707.78, which was not disputed by [Joseph].” The chart included in the chancellor’s order shows that when the chancellor divided the marital property, she awarded Tamra $18,181.20 and awarded Joseph $11,194.02. However, as Tamra asserts in her appellate brief, when considering Joseph’s military retirement, Tamra’s award still amounts to $18,181.20, but Joseph’s award increases to an amount between $416,432.07 and $485,901.80, depending on the cost-of-living adjustment placed on the military retirement.[9] At the final hearing in this matter, Joseph testified that he would receive $1,144 per month in military-retirement benefits for the remainder of his life.[10]
¶ 25. Based upon the foregoing, I respectfully dissent as I find in this particular case that the chancellor’s failure to consider the military-retirement benefits in the equitable distribution of the proper *174 ty was an erroneous application of our law that lacks factual support.
JAMES, J., JOINS THIS OPINION IN PART.

. The record reflects that Tamra supported the marriage and Joseph's military service. Further, Tamra's testimony showed that she was unable to establish her own career and retirement because of the couple’s relocations from state to state due to Joseph’s military service.

. See Deborah Bell, Bell on Mississippi Family Law § 7.07 (2005).

. The Uniformed Services Former Spouses’ Protection Act (USFSPA), which authorizes state courts to divide military retirement pay as a marital asset, is codified at 10 United States Code section 1408 (2006). This section also provides former spouses a means to enforce a chancellor's property award by direct payments through the service member’s retirement payments. While the USFSPA gives states the authority to determine whether military benefits are separate, marital, or community property, the terms of the USFSPA must still be followed with regard to the amount of retirement benefits awarded to the former spouse. "The total amount of the disposable retired pay of a member payable *172 under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay.” 10 U.S.C. § 1408(e). Also, the benefits may not be awárded as a lump sum, as state courts "have not been granted the authority to treat total retired pay as corn-munity property.” Mansell v. Mansell, 490 U.S. 581, 589, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). For definitions relevant to the USFSPA, see 5 United States Code section 8331 (2006) and 10 United States Code section 1408.

. According to the chancellor’s final judgment, Michelle Mabry, the financial advisor who performed the valuation of Joseph’s military-retirement benefits, determined that "Joseph’s future income stream is $474,707.78 at 4% cost of living adjustment (COLA) and $405,238.05 at 3% COLA.”

. Joseph also receives military disability benefits of $453 a month. In Mansell, the United State Supreme Court found that the USFSPA fails to grant state courts the power to treat as divisible military retirement pay that has been waived in order to receive military disability pay. Mansell, 490 U.S. at 594-95, 109 S.Ct. 2023. The chancellor here did not consider Joseph’s disability benefits in the division of property. However, in Steiner v. Steiner, 788 So.2d 771, 777-78 (¶ 21) (Miss.2001), the Mississippi Supreme Court acknowledged that some state courts have applied the narrower finding in Rose v. Rose, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987), to hold that disability payments may be considered as a factor in determining a veteran's ability to pay spousal maintenance and child support.