# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00060-COA

**TOULMAN D. BOATWRIGHT, JR.**                                    **APPELLANT**

**v.**

**GRACE BONDS BOATWRIGHT**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/2013 |
| TRIAL JUDGE: | HON. ROBERT L. LANCASTER |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | HELEN KENNEDY ROBINSON |
| ATTORNEYS FOR APPELLEE: | AMANDA WHALEY SMITH |
| | KENT E. SMITH |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | MOTION FOR NEW TRIAL DENIED |
| DISPOSITION: | AFFIRMED - 06/23/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MCGEHEE, S.J., FOR THE COURT:**[1]

¶1.    This domestic case was originally heard by Chancellor Edwin Roberts, who is now

---

[1] Five of the judges currently serving on this Court recused themselves from participation in this case, leaving five judges to review the appeal. The recused judges are: Judge Donna M. Barnes, Judge Larry E. Roberts, Judge James D. Maxwell II, Judge Eugene L. Fair Jr., and Judge Ceola James. Because a quorum of six judges is required to reach a decision, this Court requested Mississippi Supreme Court Chief Justice William L. Waller Jr. to appoint a special judge to participate in the decision of this appeal. The request was granted by the supreme court in an order signed and entered by Chief Justice Waller on February 19, 2015. Pursuant to Mississippi Code Annotated section 9-1-105 (Rev. 2014), Chief Justice Waller appointed Senior Status Judge Hollis McGehee to serve as special judge for the limited purpose of participating in the consideration and decision of this case, including any motion for rehearing.

deceased. While presiding over the Boatwrights' case, Judge Roberts accepted an invitation from Grace Boatwright's attorney to participate in a turkey hunt. On the day of a scheduled hearing, Toulman Boatwright's attorney inquired about the hunt; Judge Roberts then continued the case. Thereafter Judge Roberts entered two orders relating to matters heard by him prior to the turkey hunt. Then Judge Roberts recused on his own motion. Toulman requested a new trial based on his allegation of bias by Judge Roberts; or, in the alternative, he requested an order altering or amending certain relief granted by Judge Roberts. Ultimately, Toulman's motion was heard by a special judge, who granted Toulman some relief but denied his motion for a new trial and all other relief. We affirm the trial court's judgment.

¶2. This Court recognizes the ultimate importance of the integrity of the judiciary. Judicial integrity is vitally important to the bench, the bar, our society as a whole, and especially to litigants. To that end, judges must always conduct themselves in ways that promote the integrity and independence of the judiciary. The high standards of judicial integrity and independence do not operate as a complete bar to a judge's acceptance of social invitations. Timing is critical. Clearly a judge may not accept an invitation of any kind that might call into question his independence or integrity in any matter over which the judge is presiding. An invitation to turkey hunt, or any other similar social invitation, extended by one of the attorneys who is then appearing in a contested matter, is one that must be refused. Judge Roberts's voluntary recusal on his own motion reflects his acknowledgment of this principle. The ideal course for a sitting judge is to avoid the potential conflict in the first

2

place. There are occasions when a judge sees a conflict in retrospect, then recuses. Judge Roberts recused; nothing more was required.

¶3.     Judge Roberts's entry of two orders after the turkey hunt and prior to recusal was not error. Judge Roberts's entry of these two orders, addressing issues heard prior to the turkey hunt, was not only proper, it was required as a part of the completion of his duties in this matter.

## FACTS AND PROCEDURAL HISTORY

¶4.     This matter is before the Court a second time. Toulman's motion for a new trial was initially denied by Judge Glenn Alderson, who was appointed after Judge Roberts's recusal. Toulman appealed. *Boatwright v. Boatwright*, 155 So. 3d 777 (Miss. Ct. App. 2011). On appeal, this Court reversed and remanded because Judge Alderson admittedly had not reviewed the record, but simply deflected the matter to the appellate court to make a decision. *Id.* at 779-80 (¶13). The Court directed the chancellor to review the record and render a decision. *Id.* On remand, Judge Alderson immediately recused. Judge Robert L. Lancaster was appointed. He reviewed the record and denied Toulman's motion. Toulman now appeals a second time.

¶5.     The facts and procedural history were set out in this Court's first opinion and are restated here.

> On May 12, 2004, Judge Edwin Roberts of the Marshall County Chancery Court granted Grace Bonds Boatwright and Toulman D. Boatwright Jr. a divorce on the ground of irreconcilable differences. Grace was awarded primary physical custody of the couple's three minor children, Wynne, Hannah, and Dunn. Toulman was ordered to pay $320 per month in child support, as well as $80 per month for health insurance, one-half of the out-of-

3

pocket medical expenses, and a portion of the children's school tuition. Toulman was also ordered to maintain a life-insurance policy with the three children as beneficiaries.

Since the divorce decree, the relationship between Grace and Toulman has deteriorated such that the parties have been unwilling to communicate, resulting in the filing of numerous motions and petitions over the years.

The instant case stems from a petition for contempt and modification filed by Grace on October 19, 2007. An agreed temporary order was entered that, among other things, gave Toulman additional visitation with Hannah and appointed Jennifer Shackelford as guardian ad litem (GAL) for the children. On May 20, 2008, Grace filed a motion for emergency relief alleging that recordings between Toulman and Hannah, who was sixteen years old at the time, evidenced that Toulman's visitation with his minor children should be restricted. These recordings indicate a desire on Toulman's behalf and a willingness on Hannah's behalf that Hannah engage in violent activities against Grace and her older sister, Wynne. Judge Roberts subsequently suspended Toulman's visitation with Dunn, who was approximately five years old at that time. The day after Grace filed her motion for emergency relief, L. Anne Jackson, Toulman's counsel since November 2007, filed a motion to withdraw as counsel. On May 23, 2008, Helen Kennedy Robinson was substituted as Toulman's counsel.

At some point after this, Hannah went to live with her paternal grandparents. Per Toulman's request, Judge Roberts entered a temporary order allowing Toulman to pay Hannah's portion of his child-support payment to the paternal grandparents.

On October 6, 2008, Toulman filed a motion for Judge Roberts to recuse. In response, Grace filed a counter-motion for sanctions. After a hearing on the matter, Judge Roberts took the matter under advisement. On October 28, 2008, Judge Roberts denied Toulman's motion to recuse, delivering a lengthy opinion in which he found that Toulman was unable to substantiate any of the allegations made in support of his motion. It was determined that Grace's motion for sanctions would be heard at a later date. Toulman subsequently filed a petition with the Mississippi Supreme Court to review the denial of his motion to recuse. The supreme court denied Toulman's petition by order dated December 10, 2008.

A hearing on the merits of all pending motions and petitions was held for three days in mid-February 2009. Judge Roberts heard Grace's motion for

sanctions on March 10, 2009, and ultimately awarded Grace $4,305 in attorneys' fees and $733.11 in expenses. Toulman was also ordered to pay $900 to Shackelford, the GAL, for a total of $5,938.11. The order imposing sanctions was executed on April 14, 2009, nunc pro tunc to March 10, 2009.

In regard to the original petition for contempt and modification filed by Grace, Judge Roberts found Toulman to be in contempt and ordered him to pay a fine for each instance of contempt. Judge Roberts also ordered Toulman to pay Grace's attorneys' fees in regard to the contempt proceeding, but he further directed a writ of inquiry to determine the amount of attorneys' fees attributed to the contempt action. Judge Roberts further found that it was in Hannah's best interest to remain living with her paternal grandparents until the end of the school year. Judge Roberts also set visitation, ordered the parties to attend counseling sessions, and modified the child support. This order was executed on April 9, 2009, nunc pro tunc to March 10, 2009. However, Judge Roberts determined that issues regarding Hannah and her custody, visitation, and support were temporary and would be reviewed on August 14, 2009.

On the morning of April 9, 2009, the parties presented for the scheduled writ of inquiry regarding attorneys' fees. Toulman's attorney, Robinson, requested a conference in chambers, wherein she informed Judge Roberts that she had received information which required her to file another motion to recuse. The issue of attorneys' fees was never resolved. On April 16, 2009, Judge Roberts granted Toulman's motion to file a sealed motion to recuse. That same day, Toulman filed a motion to alter or amend or for a new trial based on newly discovered evidence. Robinson had discovered that Judge Roberts had gone turkey hunting with one of Grace's attorneys, Kent Smith, on April 8, 2009. Grace's other attorney is Kent Smith's wife, Amanda Whaley Smith.

On April 20, 2009, Judge Roberts, on his own motion, recused himself from the case. The case was then assigned to Judge Glenn Alderson, who conducted a hearing on Toulman's motion for a new trial. Judge Alderson decided that rather than conduct a new trial on the merits, the most economical decision would be for the parties to appeal and allow the appellate court to determine whether there was any wrongdoing. Judge Alderson ultimately denied the motion.

*Boatwright*, 155 So. 3d at 777-79 (¶¶2-10).

¶6.   On remand, Judge Lancaster, the third judge in this matter, considered the issues

raised in Toulman's motion for a new trial and/or to alter or amend orders entered by Judge Roberts. Toulman's motion argued that newly discovered evidence—the turkey hunt—revealed bias on the behalf of Judge Roberts and necessitated a new trial. The motion requested the two orders entered after the turkey hunt but prior to Judge Roberts's recusal be vacated. The two orders entered after the turkey hunt and prior to the recusal are: (1) the April 9, 2009 order finding Toulman in contempt and fining him $1,000; and (2) the April 14, 2009 order sanctioning Toulman and his attorney in the amount of $5,938.11 for filing the initial motion to recuse. Both orders were signed nunc pro tunc to March 10, 2009, the day the motions were heard. Toulman alternatively argued that if his motion for a new trial was denied, the following judgments against him should be altered or amended: the award of sanctions, the finding of willful contempt, the order to attend counseling sessions, the award of attorneys' fees for contempt, and the order of child support.

¶7. On June 26, 2013, Judge Lancaster denied the motion for a new trial and/or to alter or amend, with the exception of the fine of $1,000, which he vacated. In altering the April 9, 2009 judgment to omit the $1,000 civil-contempt fine, Judge Lancaster took issue not with the fine itself, but that Judge Roberts had ordered the fine to be payable to the county. Judge Lancaster found that this was inappropriate, stating that a fine payable to the county "is a punishment for criminal contempt and not shown to be a means to coerce compliance under civil contempt." As to Toulman's argument for a new trial based on Judge Roberts's bias, Judge Lancaster found no evidence of bias against Toulman or his counsel. Judge Lancaster held that the sporadic social relationship between the chancellor and Smith would not cause

6

an objective, fully informed person to doubt the chancellor's impartiality. On December 16, 2013, Judge Lancaster entered a final judgment on the "remaining issue to conclude this litigation." The remaining issue was the motion for attorneys' fees for contempt. The chancellor ordered Toulman to pay $2,100 toward Grace's attorneys' fees. Toulman appealed.

¶8. Toulman raises three issues on appeal: (1) Judge Lancaster erred in denying his motion for a new trial since Judge Roberts should have initially recused in this matter; (2) Judge Lancaster erred in finding that Judge Roberts properly imposed sanctions for Toulman's initial motion to recuse; and (3) Judge Roberts's rulings should be reversed due to bias.

## STANDARD OF REVIEW

¶9. Our review of a chancellor's decision is limited. *Ballard v. Commercial Bank of DeKalb*, 991 So. 2d 1201, 1204-05 (¶13) (Miss. 2008). This Court will not disturb the chancellor's findings unless those findings are manifestly wrong or clearly erroneous, or the chancellor applied an incorrect legal standard. *Id.* at 1205 (¶13). Where the chancellor's findings are supported by substantial evidence, this Court is without authority to disturb his or her conclusions, although this Court might have found otherwise as an original matter. *Id.* The standard of review for the grant or denial of a new trial is abuse of discretion. *Barriffe v. Estate of Nelson*, 153 So. 3d 613, 618 (¶22) (Miss. 2014). When deciding whether to grant a new trial, chancellors are "given great deference." *Id.* Because of "the important corrective role of new-trial motions," this deference is "exceedingly broad." *Id.*

7

**ANALYSIS**

## I.    DENIAL OF MOTION FOR A NEW TRIAL

¶10.    Toulman argues he is entitled to a new trial based on Judge Roberts's refusal to recuse himself from this matter upon Toulman's request in October 2008. Toulman argues that the April 2009 turkey hunt brought to light preexisting bias, and that all unfavorable rulings against him—pre- and post-turkey hunt—should be reversed for a new trial before an impartial chancellor.

¶11.    Toulman's October 6, 2008 recusal motion was based on statements and rulings made by Judge Roberts, which counsel states were "derogatory" and gave her the impression that Judge Roberts was "totally fed up and disgusted with" Toulman. In his brief, Toulman states that at the time the 2008 recusal motion was filed, he "was quite aware of the [c]hancellor's bias, but he did not know the reason for any bias." It was not until he and his attorney learned of the April 2009 turkey hunt that they discovered the personal relationship between Judge Roberts and Smith. Toulman asserts that Judge Roberts had a duty to disclose the relationship, and his sua sponte recusal after the matter was brought to his attention was "a clear admission" of the error.

¶12.    Under the Code of Judicial Conduct, a judge must grant a motion to recuse or disqualify when that judge's "impartiality might be questioned by a reasonable person knowing all the circumstances . . . , including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party[.]" Code of Judicial Conduct, Canon 3(E)(1)(a); *see also* UCCR 1.11. Though a judge is presumed to be qualified and unbiased,

a judge must recuse when a reasonable person aware of all the circumstances would doubt the judge's impartiality. *Collins v. Joshi*, 611 So. 2d 898, 901 (Miss. 1992). "The obligation to maintain impartiality is a general standard, and if a reasonable person would question a judge's impartiality, disqualification is required, even if a specific provision of the Code does not require disqualification." Jackson & Campbell, *Commentary on Judicial Ethics in Mississippi* § 6:1 (2010) (citing Code of Judicial Conduct, Canon 3(E) commentary); *see also Buchanan v. Buchanan*, 587 So. 2d 892, 896 (Miss. 1991).

¶13. The social relationship between Judge Roberts and Smith was limited to turkey hunts on the attorney's land. Smith testified these turkey hunts occurred on one to three occasions in 2005-06; on one to three occasions in 2007; and once in 2009, on April 8. So, between 2005 and 2009, the two hunted together between three and seven times. There was no other reported interaction. Smith testified that he and Judge Roberts did not discuss the Boatwrights' case while hunting. Smith also testified that he initially appeared in the case in 2004 when the parties' assets were being divided. However, the matter settled, and he did not appear again as counsel until February 2009. The current matter stems from Grace's petition for contempt and modification filed on October 19, 2007.

¶14. On careful and thorough review of the eight-volume record in this matter, Judge Lancaster found no appearance of impartiality on behalf of Judge Roberts. Specifically, he found that "an objective, disinterested observer, fully informed of the facts would [not] entertain significant doubt that justice would be or has not been done in this case." Judge Lancaster reviewed the social relationship under the Code of Judicial Conduct and cited

approximately a dozen Mississippi cases discussing the objective-reasonable-person standard, which he stated he considered in reaching his decision. We find that Judge Lancaster's finding is consistent with "[t]he general rule . . . that mere social acquaintance alone does not automatically create an appearance of impropriety." Jackson & Campbell, *Commentary on Judicial Ethics in Mississippi* § 6:15 (2010) (citing *Scafide v. Bazzone*, 962 So. 2d 585, 599 (¶49) (Miss. Ct. App. 2006)). It is also consistent with this Court's recent finding that evidence of an attorney and chancellor's personal relationship, which was disclosed and described as frequently eating lunch and attending sporting events together, was not sufficient to require the judge's recusal. *In re Guardianship of McClinton*, 157 So. 3d 862, 872 (¶¶24-25) (Miss. Ct. App. 2015).

¶15. Judge Lancaster's opinion on recusal was addressed to the original recusal motion. He found no reasonable doubt existed as to Judge Roberts's impartiality. That ruling, as to the earlier recusal motion filed on October 6, 2008, is affirmed. However, we note here, as Judge Roberts did by his sua sponte recusal, accepting an invitation to a turkey hunt with one of the lawyers in this matter while the case was ongoing caused the appearance of Judge Roberts's impartiality to come into question. The mere fact that a judge has social contact with lawyers is not the issue and is not the basis for a recusal. However, accepting such a unilateral invitation while in the process of sitting in a contested matter is problematic and should be avoided. Judges are human. Judge Roberts accepted an invitation he should have declined. The issue was brought to his attention, and he properly recused himself. The better practice would have been to refuse that invitation. But Judge Roberts corrected his own

10

mistake by recusing himself, thus removing any appearance of impropriety or lack of impartiality.

¶16.    While agreeing that Judge Roberts erred by going on the turkey hunt, the dissent goes further, finding that Judge Roberts should have recused earlier in the proceedings based on the pretrial social relationship.  The dissent finds that Judge Lancaster applied an incorrect standard in denying the motion for a new trial.  Specifically, the dissent finds that Judge Lancaster only considered whether "actual" bias existed on behalf of Judge Roberts, and that he failed to consider the lesser standard required by our law—whether an "appearance" of bias existed.  The dissent also states that Judge Lancaster incorrectly focused on the April 2009 turkey hunt "in isolation from other circumstances," instead of considering the "totality of the circumstances."  We do not find either to be the case.  Judge Lancaster's order addresses the relationship, spanning back to 2005.  It specifically states that "[t]here was no proof of a social relationship other than these [three to seven] occasions of turkey hunting together."  And it states that the 2007 hunting trips were "all before the subject trial occurred."  His findings further state that the 2009 hunt occurred "after the subject trial was completed and the final decision made" (with the exception of the decision on the amount of the award of attorneys' fees for contempt, which was ultimately decided by Judge Lancaster).  The standard used by Judge Lancaster in reviewing this matter was whether a reasonable person knowing the circumstances would have reasonable doubt as to Judge Roberts's impartiality.  Specifically, Judge Lancaster stated he considered whether "an objective, disinterested observer, fully informed of the facts, would entertain significant

11

doubt that justice would be or has not been done in this case." One of the cases cited by Judge Lancaster for this standard is the same used by the dissent in support of its argument, *Jenkins v. Forrest County General Hospital*, 542 So. 2d 1180, 1181 (Miss. 1988). We find that Judge Lancaster considered the totality of the circumstances, and that he correctly applied the law.

¶17. We now address the two orders entered by Judge Roberts after he accepted the invitation to hunt with Smith—a situation necessitating his recusal—but prior to his actual recusal. The hunt was on April 8, the hearing was scheduled for April 9 (Judge Roberts continued the hearing after discussion of the turkey hunt), and Judge Roberts's sua sponte recusal order was entered on April 20. Between April 8 and April 20, Judge Roberts entered two orders, both nunc pro tunc to March 10. Toulman argues these two orders should be vacated. A judge who has recused has no authority to make rulings in the case. *Miss. Comm'n on Judicial Performance v. Skinner*, 119 So. 3d 294, 300 (¶11) (Miss. 2013). Although the two orders were entered before Judge Roberts's recusal, the need for recusal had risen, so we find the same principle applies. A judge, having become aware of a need to recuse, should not make subsequent rulings in that matter. However, in this instance, the two orders in question, signed on April 9 and 14, were not new rulings addressing matters that arose after Judge Roberts accepted the invitation to go on a turkey hunt. The two orders entered by Judge Roberts simply reduced to writing findings and orders made by the court at the March 10, 2009 hearing. The orders were signed "nunc pro tunc" to March 10, 2009, and were consistent with Judge Roberts's oral rulings announced on March 10.

12

¶18.    A similar situation was recently addressed by our supreme court in *Barnes v. Jefferson Davis County School District*, 160 So. 3d 1149, 1153-54 (¶¶20-22) (Miss. 2015).  In *Barnes*, the appellant filed an interlocutory appeal, arguing that the trial judge improperly ruled in a case from which he had recused.  The supreme court found no error was committed since the trial judge's order only memorialized prior rulings he had made from the bench.  The supreme court reasoned as follows:

> The only "ruling" issued by the trial judge after his recusal was an order memorializing the rulings he previously had made from the bench; he did not rule on the sanctions issue or other additional issues.  And importantly, our rules *require* the trial court to enter such an order.  *See* [M.R.C.P.] 58 ("Every judgment shall be set forth on a separate document.") (emphasis added); [M.R.C.P.] 54(a) ("'Judgment' as used in these rules includes any order from which an appeal lies.").  *See also Banks v. Banks*, 511 So. 2d 933, 934 (Miss. 1987).  As such, we find that the trial judge did not "rule" on anything after he had recused himself from the case going forward.

*Barnes*, 160 So. 3d at 1154 (¶22).

¶19.    We find Judge Roberts did not err by entering the April 9 and 14 orders, nunc pro tunc to March 10, 2009, as he made no rulings after the need for recusal arose.  *See id.*  When the March 10, 2009 rulings were made, Judge Roberts had no basis for recusal.  As stated in *Barnes*, Judge Roberts was required by law to enter an order on the prior March 10 rulings.  *See id.*  The dissent argues that *Barnes* is inapplicable because it addresses a judge's recusal from a second trial based on knowledge gained from the first trial, while the instant matter pertains to recusal based on extrajudicial activities.  We find this distinction immaterial.  In both cases, the need for recusal arose during the course of the proceedings, and both judges entered orders memorializing findings made before the need for recusal had arisen.  We find

the principle applied by the supreme court in *Barnes* applicable here. Judge Roberts did not err in entering the orders memorializing his prior rulings, which were made before the need for recusal occurred.

¶20. Giving great deference to Judge Lancaster's findings, as is required by our standard of review, we find he did not abuse his discretion in denying the motion for a new trial. Judge Lancaster thoroughly considered Toulman's motion for a new trial and issued a well-reasoned opinion. Judge Lancaster's decision specifically states that he reviewed the entire eight-volume transcript of the previous hearings relevant to the motion for a new trial, as well as the record on the initial hearing on the motion for a new trial. He reviewed the initial appellate briefs of each party and the record of the pleadings prepared for the first appeal. He reviewed the April 9 and 14 orders entered after the turkey hunt and found they were supported by the evidence, with the exception of the April 9 fine of $1,000, which he vacated. Judge Lancaster's decision was supported by the evidence, and he did not abuse his discretion in denying the motion for a new trial.

## II. SANCTIONS

¶21. Toulman next argues that Judge Roberts's award of sanctions for his filing the 2008 motion to recuse was error, as evidenced by the later-discovered social relationship between Judge Roberts and Smith, which began in 2005.

¶22. "The decision to award monetary sanctions is left to the discretion of the trial court," and is reviewed for abuse of discretion. *Hampton v. Blackmon*, 145 So. 3d 632, 634 (¶7) (Miss. 2014). "In the absence of a definite and firm conviction that the court below

14

committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors, the judgment of the court's imposition of sanctions will be affirmed." *Id.* A court shall award "reasonable attorney's fees and costs" if it "finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment[.]" Miss. Code Ann. § 11-55-5 (Rev. 2012); *see also* M.R.C.P. 11. "A claim is frivolous when the claimant has no hope of success." *McNeese v. McNeese*, 129 So. 3d 125, 131 (¶16) (Miss. 2013).

¶23. Judge Lancaster reviewed the award of sanctions and found it to be proper. He cited to Judge Roberts's reasoning for awarding the $5,938.11 in sanctions in the April 14 order, nunc pro tunc to March 10, 2009. Judge Roberts awarded sanctions because Toulman admitted that allegations in his first motion to recuse and attached affidavit were false or beyond his knowledge. For example, Toulman alleged that prior to hearings in this matter, the chancellor had gone into chambers ex parte with Grace, her brother, and her attorney. Toulman later admitted that he never saw Grace or her brother go into chambers with the judge. Further, the chancellor found that arguments made by Toulman's counsel were without basis, and appeared to have been made due to her lack of knowledge of prior proceedings in the case. Toulman's counsel later admitted to not having read the first transcript from the prior proceeding before filing the motion. Judge Roberts's finding that Toulman's motion for recusal was without substantial justification is supported by the evidence. We find Judge Lancaster did not abuse his discretion in denying the motion to

15

alter or amend the award of sanctions.

## III. ALLEGED BIAS

¶24. Under this assignment of error, Toulman gives examples of rulings by Judge Roberts in the underlying matter, which Toulman asserts indicate bias. Toulman requests a new trial before an impartial chancellor. He also argues Judge Lancaster reviewed the bias allegations under an incorrect legal standard.

¶25. As discussed, Judge Lancaster reviewed Judge Roberts's prior findings and found them supported by the evidence. He also found no appearance of bias on behalf of Judge Roberts, and no basis for granting a new trial. We cannot find Judge Lancaster abused his discretion in doing so. Therefore we find no merit to this issue and affirm.

¶26. **THE JUDGMENT OF THE MARSHALL COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**GRIFFIS, P.J., AND ISHEE, J., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND IRVING, P.J. BARNES, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., NOT PARTICIPATING.**

**CARLTON, J., DISSENTING:**

¶27. I respectfully dissent from the decision of the majority. I respectfully submit that, on remand, Judge Lancaster abused his discretion by failing to grant Toulman's motion for a new trial, which Toulman filed pursuant to Rule 59(a) of the Mississippi Rules of Civil Procedure. When considering the denial of a motion for a new trial, this Court reviews for abuse of discretion.[2] We similarly review a trial judge's decision to recuse for manifest error.

---

[2] *See Dependable Abrasives Inc. v. Pierce*, 156 So. 3d 891, 895 (¶12) (Miss. 2015).

*Steiner v. Steiner*, 788 So. 2d 771, 775 (¶9) (Miss. 2001). Where an attorney raises an allegation of judicial prejudice or bias by a trial judge, this Court reviews the record as a whole and reviews the totality of the circumstances to determine whether, regardless of whether the judge is actually biased or partial, an objectively reasonable person would question the judge's impartiality.[3] To overcome the presumption that a judge is qualified and unbiased, the evidence must raise a reasonable doubt as to the validity of the presumption.[4] The standard is designed to promote public confidence in the judiciary.

¶28. This dissent does not dispute that we review the grant or denial of a motion for a new trial for abuse of discretion. There is also not a dispute between this dissent and the majority opinion as to the objective test that applies to determine if an objectively reasonable person, under the totality of the circumstances, would question Judge Roberts's impartiality. I respectfully submit that the majority, like Judge Lancaster's opinion below, erroneously applies the objective test and relevant caselaw to the facts of the instant matter by reviewing for only actual bias or prejudice instead of determining whether the "appearance" of bias or prejudice objectively exists. I further submit that the majority errs by failing to consider the totality of the circumstances since the majority limits its review to only the February 2009 trial, the proceedings and orders following that trial, and the April 8, 2009 hunting trip.

---

[3] *See United States v. Bayless*, 201 F.3d 116, 126-27 (2d Cir. 2000); *Miss. United Methodist Conference v. Brown*, 929 So. 2d 907, 909-10 (¶¶6, 13) (Miss. 2006); *Beyer v. Easterling*, 738 So. 2d 221, 228 (¶20) (Miss. 1999); *In re Moffett*, 556 So. 2d 723, 725 (Miss. 1990); *Jenkins v. Forrest Cnty. Gen. Hosp.*, 542 So. 2d 1180, 1181-82 (Miss. 1988).

[4] *See Miss. United Methodist Conference*, 929 So. 2d at 909 (¶6); *Dillard's Inc. v. Scott*, 908 So. 2d 93, 98 (¶17) (Miss. 2005); *Jenkins*, 542 So. 2d at 1181-82.

17

¶29. The totality of the circumstances in the record reflects that the instant matter began several years before on October 19, 2007, when Grace filed her petition for contempt and her motion for modification. The record establishes that Judge Roberts went hunting with Smith, Grace's attorney, on Smith's property several times in 2007. Like Judge Lancaster below, the majority errs in excluding these circumstances from its consideration of the totality of the circumstances to determine whether an appearance of partiality or bias resulted from Judge Roberts's extrajudicial activities and social relationship with an attorney in this matter.

¶30. Indeed, the facts and procedural history of this case reflect that much occurred in this case prior to the limited events considered by the majority. The two April 2009 orders at issue on appeal reflect the culmination and determination of matters resulting from Toulman's 2008 recusal motion and raised in an action Grace initiated on October 19, 2007, when she filed her civil-contempt petition and motion for modification. After Grace filed her petition for civil contempt and motion for modification in October 2007, a plethora of hearings, orders, and rulings ensued in 2007, 2008, and 2009.

¶31. An agreed order was entered in December 2007 that allowed Toulman visitation with his daughter, Hannah, and reappointed a GAL for the children. Grace then filed a motion for emergency relief on May 20, 2008, and sought restrictions on Toulman's visitation. Toulman's original attorney withdrew from the case, and on May 23, 2008, Robinson was substituted as Toulman's new attorney. As the record reflects, Judge Roberts restricted Toulman's visitation. On October 6, 2008, Toulman filed a motion for Judge Roberts's recusal, and Grace filed a countermotion requesting that Judge Roberts impose sanctions on

18

Toulman for filing the motion to recuse. The February 2009 trial ultimately determined issues raised in the civil-contempt petition and motion for modification that Grace filed on October 19, 2007. In summary, the record shows that many matters, including the October 6, 2008 recusal motion filed by Toulman, were raised and addressed in this case well before the three-day trial held in February 2009.[5]

¶32. In support of Toulman's recusal motion, Toulman's attorney asserted that an appearance of bias was reflected in various comments and rulings made by Judge Roberts, including the following: (1) comments made by Judge Roberts in chambers; (2) Toulman's claims that he saw Grace's brother coming from Judge Roberts's chambers in Marshall County and that his daughter, Hannah, saw Grace's brother go into Judge Roberts's chambers at a hearing in Marshall County in May 2008; (3) Judge Roberts's actions of stripping Toulman of visitation and allowing the late designation of experts; (4) Judge Roberts's failure to timely implement some gradual visitation or other gradual relationship improvement; (5) Judge Roberts's failure to recognize any positive actions taken by Toulman; (6) Judge Roberts's ex parte conversation about the case with an attorney not involved in the case; (7) Judge Roberts's ruling issued on September 18, 2008, which denied Toulman's motion to compel Grace to provide certain cancelled checks; and (8) Judge Roberts's inquiry on July 25, 2008, as to whether Toulman had been indicted.

¶33. The record of the hearing on the recusal motion reflects that Toulman's attorney

---

[5] The bench ruling Judge Roberts issued on Toulman's 2008 recusal motion acknowledged a plethora of orders and hearings since the parties divorced on May 12, 2004, and since the filing of the instant action on October 19, 2007.

questioned whether Grace's attorney engaged in ex parte communication with Judge Roberts to gain the information set forth in Grace's response to Toulman's recusal motion, wherein Grace responded by stating that Judge Roberts had read the court file and had seen an indictment in the file. In questioning the source of Grace's information, Toulman's attorney explained that no hearings or dispositive matters had been set between the time when Grace received Toulman's recusal motion and when Grace served her response on Toulman.

¶34. The record reflects that Judge Roberts provided no disclosure of his extrajudicial hunting activities with Grace's attorney at any time during the consideration of, or the hearing on, Toulman's motion to recuse. Judge Roberts's lack of disclosure of the extrajudicial activities and social relationship with Grace's attorney, occurring while this case was pending before him, deprived the parties of knowledge regarding a matter of potential disqualification and provided the Mississippi Supreme Court an incomplete factual picture upon which to determine whether to grant Toulman's petition for interlocutory appeal of Judge Roberts's denial of his recusal motion. A review of the record also shows that, in his April 14, 2009 order imposing sanctions on Toulman for filing the 2008 recusal motion, Judge Roberts failed to provide specific reasons for the sanctions as required by the Litigation Accountability Act (the Act).[6]

---

[6] *See Leaf River Forest Prods. Inc. v. Deakle,* 661 So. 2d 188, 195 (Miss. 1995) (finding that the fact a case is weak does not show that it was brought to harass); *Nationwide Mut. Ins. Co. v. Evans*, 553 So. 2d 1117, 1120 (Miss. 1989) (discussing the requirements for imposing sanctions for frivolous pleadings pursuant to Rule 11 of the Mississippi Rules of Civil Procedure); Miss. Code Ann. § 11-55-3(a) (Rev. 2012) (establishing that "'[w]ithout substantial justification,' when used with reference to any action, claim, defense or appeal, including without limitation any motion, means that it is frivolous, groundless in fact or in law, or vexatious, as determined by the court); Miss. Code Ann. § 11-55-5(1) (Rev. 2012)

¶35. Judge Roberts's bench ruling on Toulman's recusal motion found that Toulman admitted he did not actually see Judge Roberts talk to Grace or her brother and that Toulman admitted he could not see what was going on through the door of Judge Roberts's chambers. Judge Roberts found that Toulman's daughter, Hannah, also testified that she did not actually see Grace or her brother talk to Judge Roberts but that she just saw them go into his chambers. However, the record of Judge Roberts's bench ruling reflects that Judge Roberts acknowledged that people commonly roamed the halls behind the bench in the Marshall County courtroom before proceedings "as they visit[ed] [the] restrooms, coffee room[,] and other things."

¶36. Judge Roberts denied Toulman's motion to recuse and determined that Grace's motion for sanctions would be determined at a later date. In granting Grace's countermotion for sanctions in response to Toulman's recusal motion, the record shows that Judge Roberts imposed sanctions on Toulman by oral ruling over a year later in a hearing on March 10, 2009. The record further shows that Judge Roberts subsequently executed the written order imposing those sanctions on April 14, 2009, and that, in so doing, he awarded Grace $4,305 in attorney's fees; $733.11 in expenses; and $900 to the GAL. Also, on April 9, 2009, Judge Roberts executed an order that determined the issues raised in Grace's original petition for civil contempt and motion for modification that she filed on October 19, 2007. Toulman subsequently requested a new trial on the matters determined by these two April 2009 orders and related judgments.

_____

(requiring a filing to be found "without substantial justification").

21

¶37. The majority's reasoning is misplaced in asserting that only matters occurring at or after the February 2009 trial need to be considered. The record reflects that Judge Roberts presided over this instant matter since October 19, 2007, and that he held numerous hearings and issued a plethora of orders and rulings in 2007, in 2008, and before the February 2009 trial. The failure to review the totality of the circumstances in this case constitutes an erroneous application of the relevant caselaw, as does the failure to review for the appearance of bias or prejudice.

¶38. On April 9, 2009, Toulman's attorney presented Judge Roberts with her discovery of Judge Roberts's extrajudicial activities with Grace's attorney. After informing Judge Roberts of the new evidence, Toulman's attorney further informed Judge Roberts of her intent to file a new recusal motion based upon the discovery of his extrajudicial activity and the resulting appearance of a lack of impartiality.[7] After the matter was presented to him, Judge Roberts issued a post-trial sua sponte recusal order on April 20, 2009. In his recusal order, Judge Roberts stated that, on his own motion, he found the interests of justice and equity required him to recuse.[8]

¶39. Precedent reflects that we review a judge's decision to recuse for manifest error and

---

[7] As discussed, Toulman's attorney filed a prior recusal motion on October 6, 2008. Judge Roberts denied the recusal motion and later entered an order imposing sanctions for the motion pursuant to the Act.

[8] *See Steiner*, 788 So. 2d at 775 (¶9) ("The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards." (quoting *Bryan v. Holzer*, 589 So. 2d 648, 654 (Miss. 1991))). *Cf. Collins v. Joshi*, 611 So. 2d 898, 901 (Miss. 1992) (finding reasonable doubt was raised regarding the trial judge's bias due to his recusal in a similar case).

that we will not reverse as long as the judge applied the correct legal standard. *Steiner*, 788 So. 2d at 775 (¶9). As a reviewing appellate court, we must give sufficient deference to Judge Roberts's own finding that justice required his recusal due to his extrajudicial activities and the appearance of a lack of impartiality with regard to this pending matter. *Id.* at (¶¶9-12). Moreover, we must adhere to our objective standard of review of alleged bias and prejudice in acknowledging that the totality of the circumstances and the evidence in the record support Judge Roberts's finding that justice required his recusal because of an appearance of bias or lack of impartiality. *Id. See generally Jenkins v. Forrest Cnty. Gen. Hosp.*, 542 So. 2d 1180, 1181 (Miss. 1988) (discussing the extrajudicial circumstances under which a judge should recuse himself).

¶40.   Due to the appearance of bias and the impact of Judge Roberts's extrajudicial relationship with Grace's attorney, the interests of justice are best served by reversing and granting a new trial. The record reflects that Judge Roberts failed to disclose his extrajudicial social relationship and his hunting trips when determining motions or during other hearings in 2007 and 2008. There was also no disclosure or remittal before the February 2009 trial or the March 2009 hearing. In addition, even after denying Toulman's recusal motion and possessing awareness of Toulman's concerns regarding bias, Judge Roberts engaged in another hunting trip with Smith on April 8, 2009. This last hunting trip occurred shortly after the February 2009 trial and immediately before the date of a writ of inquiry that was scheduled for April 9, 2009, to determine a bill submitted by Smith's firm for over $39,000 in attorney's fees. After reviewing the record, this Court has no choice but to reverse and

23

remand for a new trial. The issue is not wrongdoing on Judge Roberts's part but rather the potential for such and the appearance of bias to the general public. *See Jenkins*, 542 So. 2d at 1181.

¶41. In applying our caselaw to the totality of the circumstances in this case, we must acknowledge that an appearance of bias sufficient to raise a reasonable doubt as to a judge's impartiality, as determined by a reasonable person knowing all the circumstances, is measured by an objective standard and requires no actual wrongdoing by the judge. *Id.* In applying an objective standard to this case, an appearance of partiality arises from the totality of the evidence and the resulting inferences due to Judge Roberts's extrajudicial activities and social relationship with an attorney in this contested matter then pending before him and due to Judge Roberts's nondisclosure of these activities.[9] Due to the appearance of extrajudicial influence stemming from Judge Roberts's extrajudicial activities with Smith during the present case, the totality of the circumstances reflects sufficient objective reasonable doubt to overcome the presumption that Judge Roberts was unbiased.[10]

¶42. After learning from a deputy sheriff about Judge Roberts's social relationship and extrajudicial activity with opposing counsel, Toulman now seeks a new trial on the matters determined by the two orders Judge Roberts executed in April 2009, nunc pro tunc to March

_____

[9] *See* Miss. Code Jud. Conduct Canon 3F (discussing a judge's remittal of disqualification). *See also Stringer v. Astrue*, 252 F. App'x 645, 647-48 (5th Cir. 2007) ("Recusal can be based on extrajudicial factors [such as] bias based on family relationships or other [extrajudicial] influences[.]").

[10] *See Miss. United Methodist Conference*, 929 So. 2d at 909 (¶6); *Jenkins*, 542 So. 2d at 1181. *See also Stringer*, 252 F. App'x at 647-48 (stating that bias can be based on family relationships or other extrajudicial influences or on intrajudicial factors).

10, 2009, and the related judgments. To support his request for a new trial, Toulman argues that Judge Lancaster abused his discretion by denying Toulman's motion for a new trial. As stated, Judge Roberts's own recusal order recognized that justice required his recusal. We should likewise acknowledge that the appearance of partiality reflected by the totality of the circumstances in this case objectively created a reasonable doubt sufficient to cause a reasonable person to question Judge Roberts's impartiality, and upon appellate review, this Court should find that Judge Lancaster abused his discretion by denying Toulman's motion for a new trial.[11] Judge Lancaster's erroneous failure to review the totality of the circumstances and his erroneous failure to review for the appearance of bias constituted an abuse of discretion.

¶43. In denying Toulman's motion for a new trial, I submit that Judge Lancaster erred by considering the April 8, 2009 hunting trip in isolation from other circumstances and by reviewing only for actual bias.[12] Furthermore, Judge Lancaster failed to remedy the appearance of judicial bias and the appearance of prejudice arising from the facts and inferences of Judge Roberts's aforementioned conduct, extrajudicial activities, and rulings.

---

[11] A refusal to vacate the orders Judge Roberts executed in April 2009 and to grant a new trial would be inconsistent with substantial justice. *See* M.R.C.P. 61. *See also Schmidt v. Bermudez*, 5 So. 3d 1064, 1065 (¶3) (Miss. 2009) (remanding the case for a new trial because the defendant failed to receive a fair trial before an impartial tribunal); *Steiner*, 788 So. 2d at 775 (¶12) (finding no abuse of discretion where the chancellor followed the common practice of the district and recused because one of the parties was a practicing attorney in the district); *Beyer*, 738 So. 2d at 228 (¶22) (finding that, on remand, it would be preferable for another judge to hear the case since one party to the case was a local attorney who had known the judge professionally for a number of years).

[12] *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (establishing the extrajudicial-source rule).

Now, upon review, our task requires us to determine whether, under the totality of the circumstances, due process and the appearance of judicial bias warrant a new trial and whether Judge Lancaster abused his discretion by failing to grant Toulman's request for a new trial. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (applying an objective standard and determining whether, under the totality of the circumstances, the appearance of judicial bias or prejudice demanded a new trial). *See also United States v. Murphy*, 768 F.2d 1518, 1538 (7th Cir. 1985) (finding that a judge's vacation plans with a prosecutor reflected a social relationship and implied extensive personal contact between the judge and the prosecutor). Precedent establishes that due process requires that a finding of judicial bias, even absent a finding of actual bias, warrants reversal. *See Caperton*, 556 U.S. at 883-84.

¶44.    I agree with the majority that mere social contact between a judge and an attorney is not the issue in this litigation and is not the basis for recusal. I further submit that mere adverse rulings fail to constitute a sufficient showing of bias. In addition, I agree with the majority that accepting a unilateral invitation from the attorney of a party in a pending case is problematic, particularly where the conduct occurs on several or multiple occasions. In *In re Anderson*, 412 So. 2d 743, 744-45 (Miss. 1982), the Mississippi Supreme Court explained that, absent proof of ill will or malice, due process should be remedied through appeal or otherwise and not through disciplinary proceedings. The task before this Court in the instant appeal necessarily requires us to remedy the injury to due process caused by the objective appearance of partiality arising due to the circumstances surrounding Judge

26

Roberts's extrajudicial activities with an attorney in a pending matter. An appearance of bias or prejudice may exist without proof of ill will or malice and involves no disciplinary proceeding. *See Dodson v. Singing River Hosp. Sys.*, 839 So. 2d 530, 534 (¶16) (Miss. 2003) (finding that the totality of the circumstances showed that the trial judge should have recused but also explaining that the appellate court was in no way questioning the motive or integrity of the trial judge). Judge Roberts's integrity is evident in the stand he took to honor justice when realizing the impact on the integrity of his rulings in this case due to his extrajudicial activities.

¶45. As stated, we are not required to find any ill motive or actual bias to acknowledge the existence of, and to remedy, an appearance of judicial partiality. "[A] judge may . . . , through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute." *In re Anderson*, 412 So. 2d at 745 (quoting *In re Nowell*, 237 S.E.2d 246, 255 (N.C. 1977)). The result is the same, regardless of whether bad faith, negligence, or ignorance is involved. *Id. See also Beyer v. Easterling*, 738 So. 2d 221, 228 (¶22) (Miss. 1999) (reversing summary judgment and directing that, on remand, a different trial judge hear the case to avoid the appearance of partiality). Precedent and the Mississippi Code of Judicial Conduct acknowledge that the appearance of partiality arising from extrajudicial conduct can indeed create reasonable doubt to objectively question the impartiality of a judge and that no proof of wrongdoing by the judge is required. *See Jenkins*, 542 So. 2d at 1181. All that is required is for the totality of the evidence, circumstances, and resulting inferences to objectively raise

27

reasonable doubt as the impartiality of a judge. Precedent explains that the appearance of judicial partiality reflects the potential for wrongdoing and reflects the appearance of partiality to the general public and to the litigants whose cause is pending before the judge. *Id.* In the present case, the appearance of partiality exists because the circumstances, including the apparent personal relationship, the extrajudicial activities occurring contemporaneously with the pending case, and the nondisclosure of these facts, would objectively cause a reasonable person, knowing all the circumstances, to question Judge Roberts's impartiality. Furthermore, as Smith's post-trial testimony established, the extrajudicial activities occurred in 2006, 2007, and 2009.

¶46. The United States Supreme Court and our state supreme court have both recognized not only the right to an impartial judge but also that the lack of an impartial judge fails to amount to harmless error. *Caperton*, 556 U.S. at 876; *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-22 (1986); *Schmidt v. Bermudez*, 5 So. 3d 1064, 1072-73 (¶¶11-13) (Miss. 2009).[13] In *Jenkins*, our supreme court acknowledged that every litigant is entitled to an impartial judge regardless of whether the interest is revealed by an inspection of the record or developed by evidence *aliunde* the record. *Jenkins*, 542 So. 2d at 1181-82. The *Jenkins* court also explained that, where a reasonable person would harbor doubts regarding a judge's impartiality, the interests of justice are best served by recusal. *Id.* at 1181. *See also Beyer*,

---

[13] In *Schmidt*, the supreme court found the chancellor's conduct in the proceedings of the case was inconsistent with substantial justice. *Schmidt*, 5 So. 3d at 1074 (¶21). *See also* M.R.C.P. 61 ("[N]o error in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.").

738 So. 2d at 228 (¶20) (discussing the objective test for recusal adopted in *Jenkins*).

¶47.    In the present matter, the totality of the circumstances contributing to an appearance of judicial bias or prejudice include the following: (1) Judge Roberts's extrajudicial social relationship and his activity of participating in hunting trips with Grace's attorney from 2007 through April 8, 2009; (2) Judge Roberts's nondisclosure of that extrajudicial activity to Toulman's attorney in response to Toulman's 2008 recusal motion or otherwise; (3) Judge Roberts's assessment of sanctions under the Act against Toulman and his attorney for filing the 2008 recusal motion; (4) the appearance created by the discovery of the social relationship and activity by Toulman's attorney from a law enforcement officer, who was a nonparty to the matter; (5) the close proximity in time between the extrajudicial activity and the two April 2009 orders and related judgments at issue; and (6) the close identity of Smith and his firm with their client, Grace; (7) Judge Roberts's comments during the case and his hostility with Toulman's attorney; and (8) the combination of all these circumstances from the record in this contested matter. Additionally, Toulman's 2008 recusal motion sets forth other matters and rulings that Toulman and his attorney claimed caused them to question Judge Roberts's impartiality at that time.[14]

¶48.    Interestingly, in his post-trial testimony, Smith revealed that he was not just Grace's attorney but that he also possessed a close familial relationship with Grace, her children, and her brother. Smith offered to the chancellor to serve as an alternative custodial placement

---

[14] *See* UCCR 1.11 (discussing motions for the recusal of judges). *See also In re Moffett*, 556 So. 2d at 724 (discussing the two-pronged recusal motion filed in *Jenkins* that was based on several extrajudicial matters).

for the Boatwrights' children. Smith also testified that he attended the kindergarten graduation of Dunn, the parties' youngest child, and that, among other personal contacts with Grace, planned to host the wedding of the parties' daughter, Lynn, at his home. The record clearly shows that Smith and his wife, who served as his co-counsel, are closely aligned and closely identify with the party they represent.

¶49. With respect to the timing of Judge Roberts's extrajudicial activity and the proceedings below, the record reflects that, after the three-day trial in February 2009 and after the hearing on March 10, 2009, Judge Roberts set a hearing date for April 9, 2009, for a writ of inquiry to determine the amount of attorney's fees to award for the civil contempt asserted in Grace's original petition. The day before the scheduled hearing for the writ, Toulman's attorney received a bill for attorney's fees from Grace's attorney for $39,390.48—an amount that included Smith's fees for the recent trial in February 2009. As the record further shows, Judge Roberts went hunting with Smith on April 8, 2009, and at approximately noon on April 8, 2009, Toulman's attorney learned from a deputy sheriff that Judge Roberts had gone hunting with Smith on Smith's property. The totality of the circumstances in this case must include consideration of the timing of all the hunting trips Judge Roberts took with Smith while this case was pending and the circumstances surrounding the revelation of Judge Roberts's extrajudicial activities with Grace's attorney.

¶50. As discussed, we must embrace that precedent establishes that a review of the appearance of judicial bias or prejudice is distinct from a review for actual judicial bias or prejudice, and that a review of an appearance of judicial bias must be independently

30

determined. *See Caperton*, 556 U.S. at 883-84; *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859-61 (1988); *Aetna Life Ins. Co.*, 475 U.S. at 821-22.

¶51. Mississippi Code of Judicial Conduct Canon 3E(1)(a) states:

> *Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances* or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law, including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

(Emphasis added). As the Supreme Court has explained, even though no actual bias may be shown, an appearance of bias can still rise to a level where due process requires a new trial. *See Caperton*, 556 U.S. at 883-84; *Liljeberg*, 486 U.S. at 859-61.

¶52. The objective appearance of partiality extends not only to the orders Judge Roberts executed in April 2009 but also to the prior rulings in the case since its filing in 2007.[15] Thus, a new trial is warranted in this case. Judge Roberts's extrajudicial activities started in 2006 before Grace filed the instant matter in October 2007, and his hunting trips with Smith

---

[15] The majority opinion relies on *Barnes v. Jefferson Davis County School District*, 160 So. 3d 1149 (Miss. 2015), to support its finding that Judge Roberts did not err by entering the two April 2009 orders since the orders were entered nunc pro tunc to March 10, 2009, and since Judge Roberts made no further rulings after the need for recusal arose. However, I respectfully submit that *Barnes* is inapplicable to the facts of the present case. The instant litigation involves Judge Roberts's extrajudicial activities with the attorney of a party in a pending matter. The decision and facts in *Barnes* pertain to a tort-claim case where the judge, who served as the factfinder in the first trial, recused after granting a post-trial motion for a new trial. *Id.* at 1152 (¶¶10-14). As the *Barnes* decision shows, the judge explained that he had gained too much knowledge during the course of the first trial to allow him to set aside his personal feelings when making further rulings in the case. *Id.* Because *Barnes* fails to address the issue raised in the instant appeal—the extrajudicial conduct of a judge with a party or the attorney of a party in a pending matter—I respectfully submit that *Barnes* is inapplicable to the Boatwrights' case.

continued during 2007 and occurred once in 2009 while the case was still pending before him. As stated, Judge Lancaster abused his discretion by an erroneous application of relevant caselaw and the objective test applicable to recusal; by limiting his review to only actual bias or prejudice; and by failing to determine whether, under the totality of the circumstances, reasonable doubt was objectively raised to a reasonable person as to Judge Roberts's impartiality. Judge Lancaster erroneously failed to evaluate whether the circumstances objectively raised the appearance of bias or partiality. Therefore, Judge Lancaster abused his discretion by failing to grant Toulman's motion for a new trial. *See Jenkins*, 542 So. 2d at 1181. *Cf. Beyer*, 738 So. 2d at 227-28 (¶¶20-22) (discussing whether the trial judge should have recused himself).

¶53. Judge Roberts's sua sponte recusal on April 20, 2009, failed to cure the appearance of partiality impacting the integrity of his prior rulings in this matter since its filing in 2007. *Cf. Murphy*, 768 F.2d at 1538 (discussing that a judge's familiarity with a prosecutor created the appearance of extensive personal contacts). As previously acknowledged, the Supreme Court has recognized the importance of the appearance of justice and the right to an impartial judge. *See Liljeberg*, 486 U.S. at 859-61. The Supreme Court has also explained that the public's confidence in the justice system must be satisfied, and the risk of injustice to the parties must also be considered. *Id.* at 864.

¶54. Mississippi Code of Judicial Conduct Canon 4A provides that "[a] judge shall conduct all of the judge's [extrajudicial] activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge; (2) demean the judicial office; or (3)

interfere with the proper performance of judicial duties." As the heading to Canon 4 reflects, a judge shall conduct the judge's extrajudicial activities so as to minimize the risk of conflict with judicial obligations. As recognized by Canon 4A, the risk of conflict exists between judicial obligations and extrajudicial activities, and a conflict between judicial obligations and extrajudicial activities can arise without intention. Thus, when extrajudicial activities and relationships create a question to a reasonable person knowing all the circumstances as to a judge's impartiality in a pending matter, then the judge should disqualify himself. *See* Miss. Code Jud. Conduct Canon 3E.[16]

¶55. Mississippi Code of Judicial Conduct Canon 1 also cautions that a judge shall uphold the integrity and independence of the judiciary. Canon 1 further acknowledges that an independent and honorable judiciary is indispensable to justice in our society. The comment to Canon 1 explains that "[p]ublic confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility." The comment further explains that a violation of the Code of Judicial Conduct "diminishes public confidence in the judiciary and thereby does injury to the system of government under law."[17] Upon facing the impact of his extrajudicial activities with an attorney in this matter, Judge Roberts upheld the integrity and independence of the judiciary by his sua sponte recusal order, and we must now reverse and remand for a new trial to satisfy the demands of justice.

---

[16] *Cf. Jenkins*, 542 So. 2d at 1181.

[17] *See Miller v. State*, 94 So. 3d 1120, 1123 (¶7) (Miss. 2012) (stating that, when a judge's conduct is being examined according to the dictates of a canon of the Code of Judicial Conduct, the canon enjoys the status of the law). *See also* Miss. Code Jud. Conduct Canon 3E (discussing disqualification).

¶56.   Based on a review of the record and applicable caselaw, I respectfully submit that Judge Lancaster abused his discretion by denying Toulman's motion for a new trial.  We should therefore reverse and remand for a new trial.

**LEE, C.J., AND IRVING, P.J., JOIN THIS OPINION.**